REEVES v. BRAYTON.

1. RECOVERY OF REAL PROPERTY.—In action for the recovery of real
property, it is necessary for the plaintiff to show title in himself and
the right to immediate possession.

2. TRUST—EXECUTOR—CASE CRITICISED.—Testator devised and be-
queathed the residue of his estate to L in trust for the use, benefit, and
behoof of L's children, to be divided amongst them, share and share
alike, and appointed L executor of the will, "with full power to exe-
cute the same, and to sell any of my real or personal estate, and to
compound debts due my estate and to invest and reinvest the proceeds
of the remainder and residue as trustee for his children at his discre-
tion." Held, that the use of the lands embraced in this residue was

executed in L's children by operation of the statute of uses, and they were entitled to the possession, as no duty was imposed upon the trustee, the power to sell being given to him only as executor, and the power to divide applying only to such of the estate as was received by him as trustee from himself as executor on final settlement. *Reeves v. Tappan*, 21 S. C., 1, stated.

3. EFFECT OF TESTIMONY.—Deeds offered in evidence by plaintiffs for the purpose of showing that defendant and himself claimed title from a common source, have all the effect they would have had if no purpose had been declared.

4. ADMISSIONS—MISUNDERSTANDING.—Under admission by plaintiffs' counsel, which, although not so intended, naturally induced defendant to believe that the execution of a deed in her chain of title was admitted, and therefore to consent to a present trial, plaintiffs should not have been permitted to attack the validity of such deed on the ground that it was improperly filled out after it had been signed in blank.

5. GRANTOR IMPEACHING DEED.—In a case between third persons, a grantor in a deed under which one of the parties claims, is a competent witness to impeach the validity of such deed.

6. LIMITATION OF ACTIONS—CO-TENANTS.—In action for the recovery of real property by co-tenants, the minority of one of the plaintiffs will protect them all from the operation of the statute of limitations.

7. COMMON SOURCE.—Where plaintiffs claim title as devisees under a will and defendant claims under a deed made by the executor in pursuance of a power conferred in the same will, a common source of title is shown.

8. POWERS—BLANK DEEDS.—Where an executor, in whom no legal estate is vested, undertakes to convey real estate, under a power contained in his testator's will, by signing, sealing, and delivering a deed in blank, and intrusting the same to an agent to be filled up with the name of the purchaser, the amount of the consideration, and the description of the property, the deed, so filled up by the agent after negotiating a sale of such property, will not pass the *legal* title of the testator. Whether the Court of Equity would ever aid such a defective execution of this power, and what would be the rights of a purchaser of this property for valuable consideration without notice, not considered.

9. AGENCY—RATIFICATION—APPLICATION OF PROCEEDS.—A receipt of the purchase money by the executor, without knowledge of the source whence it was derived, could not operate as a ratification of her agent's act; but if the purchase money received on such a sale was applied by the executor or his agent to the purposes for which the testator had empowered the sale, the purchaser would have an equity to claim that the sale should be validated.

25—36

Before HUDSON, J., Richland, April, 1891.

This was an action by Sarah N. Reeves and others against Helen B. Brayton, for the recovery of real property, commenced February 24, 1890. The charge to the jury was as follows:

The plaintiffs, to recover in this case, must rely upon the strength of their title. They can't rely upon the weakness or any supposed defect in the title of defendant, but plaintiffs must show a perfect title to enable them to recover. A perfect title is ordinarily shown by tracing the title through a regular chain to a grant from the State; but inasmuch as, owing to the loss of deeds, neglect to record, and the various other matters of negligence that persons will be guilty of, it is the rule of evidence that the existence of the grant may be proved by showing that the citizens of the State have for twenty years or more owned, occupied, and enjoyed the premises adversely to the world; and after such adverse, open, notorious possession by a succession of citizens for over twenty years, one claiming through that succession, by proving it, would supply the place of proof of a grant. Another rule is, that where both parties claim from the same source, it is not then necessary to go any farther in search of a grant—where both parties claim from the same source, from a common source.

In this particular case, the position of the plaintiffs from the evidence is, that they claim from a source common to that from which the defendant claims, to wit, Robert N. Lewis. In order to show their title from Robert N. Lewis, they introduced his will as proof of his death and that he left a will. That will is introduced, showing disposition of his property, in which will he gave, after certain specific devises and bequests, the residue of his property to his brother, Daniel B., in trust for the children of Daniel B. Lewis, share and share alike, to be equally divided among them. In the same will he appointed Daniel B. Lewis executor, and as executor with full power to execute the will, and change the investments and sell and invest in other property. This applies to both real and personal estate. The next point in the chain of title is the death of Daniel B. Lewis, leaving a will, in which he appointed his wife, Sarah Lewis, executrix. Under

the law of the land then existing, the executrix of the estate of
Daniel B. Lewis became the executrix of the estate of Robert,
and invested by law with the full power given to Daniel B. in his
brother's will; so that whatever Daniel B. could do towards the
sale of the property under the terms of his brother's will, Daniel
B.'s widow, the executrix, could do.

The next thing is, that plaintiffs are the children, the surviv-
ing children, of Daniel B. Lewis; and they claim that they are
as a family entitled, as devisees, to that property.   At the same
time, plaintiffs introduce copies of certain papers purporting to
be deeds, one from Sarah Lewis, as executrix, to Miss Stol-
brand, conveying this particular lot of land and then a deed from
Mrs. Stoeber (Miss Stolbrand afterwards became Mrs. Stoeber)
to Mrs. Brayton for this same land, in order to show that their
claim was from the same source—Robert N. Lewis.   The plain-
tiffs next introduced evidence to show that the paper held by Miss
Stolbrand was not the deed of Mrs. Sarah Lewis, executrix;
that it was not executed by her, was not signed, sealed, and de-
livered; that she never made any sale of the land at all, but that
the paper was signed in blank for the purpose of enabling Boone
to so manage the estate as to sell a four acre tract of land in one-
fourth acre lots, and enough deeds for that purpose were signed
in blank and entrusted to Boone, who was the attorney for Mrs.
Lewis, and that the deed, therefore, to Miss Stolbrand was a
nullity, and the title of Mrs. Brayton, derived from Miss Stol-
brand, was likewise, as against them, the plaintiffs, null and void.
This is the drift of the testimony on behalf of plaintiffs.

Defendant sets up an independent source of title, to wit, by
adverse possession, and then puts in evidence the paper which
she claims to be a genuine deed from Sarah Lewis, executrix, to
Miss Stolbrand, and a paper from Mrs. Stoeber to Mrs. Bray-
ton.   In the first place, the question is made that the plaintiffs
never had title to this; that the legal title vested in Daniel B.
Lewis as trustee, and that they didn't have a title during the life-
time of the father, and that after the death of the father the title
was transmitted to the executrix, who is not before the court.   I
instruct you that Sarah Lewis, as executrix of will of Daniel B.
Lewis, never became vested with the legal title to any portion of

the lands of Robert N., which was devised in trust for these children. Daniel B. Lewis during his life time held the office both of executor and trustee. That trust was either an executed trust, or upon his death, if not executed, it would devolve by operation of law upon his oldest male heir. It appears from the testimony of the mother, that one of them, Daniel B., probably was the eldest son, and that he is living and before the court. It appears also in evidence that on a previous occasion here one of the daughters was made trustee. These matters are not alleged in the complaint, but I have allowed the allegation to go in. Whether that trust was executed or not, or whether it devolved upon the oldest son, I instruct you that the parties here before the court, in whom the title to the land vested prior to this conveyance, by this alleged conveyance by the executrix, have the right to bring this action; that the legal title is there, whether it be in one of them, the oldest son as trustee for the rest, or whether it be by appointment of the court of the daughter, nevertheless the legal title is with the plaintiffs.

The plaintiffs are properly before the court, and the plaintiffs will recover, unless that title has passed out of them; and there is the turning point in the case, and a very interesting one. Plaintiffs contend that Miss Stolbrand acquired no title, because it is testified by the mother that she never sold the lot; that she made no contract to sell, but that she did, at the request of Boone, in whom she had confidence as her manager of the estate and her attorney, sign in blank, or rather her daughter for her in her presence, and that of two witnesses, a number of papers— blank deeds— with a view to selling this four-acre lot in one-fourth-acre lots, and that she was not aware that this lot was sold; that she had nothing to do with the sale of it, and that she never gave a deed, except in the way in which she described it, and that she was not aware that Boone made any use of this kind with any of these blank deeds, and that she intended that he should have sold the four acres in one-fourth acre lots.

Now, suppose that Boone had got these deeds to sell the four acres in one fourth acre lots under these circumstances, and that he had sold them to this one, that one and another one, I charge you that not a single purchaser holding a title of that kind would

have a good title.   I say that if her testimony be true, that she did, at his request, sign these papers in blank, making no contract with anybody, knowing nothing of the purchaser, fixing no price, but telling him to take these blank papers, and to sell to whom he could, to sell in such parcels as he saw fit—in quarter acres, &c.—giving him those general instructions—and he had gone and made a sale, those people would not have had a title, because she herself had the power to sell; but no one having the power to sell can make a deed in such a general way as that, by merely signing a blank paper, putting it in the hands of some one, with the request that they find a purchaser for a tract of land and sell it.   If that be the case, if he had done what he said he was going to do, the parties would not have a title.

Still less would one get a title for a tract of land which she did not intend to sell, which she never was spoken to about; and if that person, that attorney or manager, or whatever you call him, the agent, had taken one of these blank deeds and sold that lot, or any other lot in the city, why, that purchaser would not have a title.   It is lawful, by the proper arrangement, for a grantor to sign a deed in blank, but it must have the formalities of a deed, and there must be a negotiation; there must be some understanding about the price, some distinct understanding about the premises, and the agent must act exactly in accordance with the instructions of the principal when it comes to filling up the blank.   But in this particular case, I say her deed under those circumstances would not be valid, and for this reason: the most that she possessed, the greatest power that she possessed, and the only power, was exactly the power conferred upon her husband, Daniel B. Lewis, in that will, that is, the power to sell and afterwards to invest.   This power she must have exercised herself by making the deed in due regular form, signing, sealing, and delivering it as a deed perfect in its execution according to the law. But she couldn't delegate to any one by word or writing the power to execute the power conferred on her by virtue of her office as executrix; it couldn't be delegated.   If you conclude from the preponderance of testimony in this case that Mrs. Lewis didn't make the deed to this lot, and that the title arose in this way, in the way she has described, by Boone using one of these

blanks; if she never intended it to be used for the purpose; if you should so conclude, and he sold that lot, the title is entirely invalid. The question would arise about the purchase money. Now, suppose that purchase money had been given Mrs. Lewis, that would not have made the transaction a legal one if she got the purchase money; and so these children can come in and claim that which the executrix never lawfully parted with, never conveyed according to law. However hard it may be, that does not affect them; it may be a matter of hardship, but we are here dealing with that which is law.

When parties come to buy land, they must buy from the proper owner and in the proper way, and get a legal title; and the duty of every purchaser is to investigate the title. If any purchaser unfortunately realizes that the title which he has is not a good title, the rightful claimant can come afterwards and get the land. I instruct you, under the testimony in this case, if you believe it, and that is undisputed as to the children and the parents of the children, I instruct you they have a legal title among them, and must prevail unless the defendant who claims from the same source should have proved that the legal title which once vested in them had become divested and vested in defendant. I instruct you that the deed under which Miss Stolbrand claimed, if Mrs. Lewis has told the truth, was not a deed, and gave Miss Stolbrand no title, and, of course, she had no title and could not confer it upon Mrs. Brayton.

I instruct you that the statute of limitations is no bar to this action, because where a family of children, tenants in common, are entitled to sue for the recovery of a tract of land, the statute would not bar until it barred the youngest one. The period may be out as against every one; but if the youngest one is still not barred, none of them are. The youngest child is only twenty-two years old, if the testimony be true, if I recollect aright; not much over twenty-one any way, certainly not years over twenty-one, and until the youngest child becomes twenty-one and ten years thereafter, that child is entitled to bring action to recover real estate, and until that child is barred, none are. The statute of limitations can't protect Mrs. Brayton in this case.

These points have been passed on by me, and it is for you to

apply the evidence.   The case is involved in a narrow compass. A great deal of argument has been had, but it was to elucidate the points of law more than anything else.   There is no evidence as to the rental value of the land.   If you find for plaintiffs, say we find for plaintiffs the land in dispute; if you find for defendant, say we find for defendant.

Mr. Youmans: I would think the jury are judges of the credibility of the testimony, and if they believe from the testimony that Mrs. Lewis did regularly execute the deed in question, the verdict must be for defendant.

The Court: Oh, yes; I have left the testimony entirely to them, of course.   Gentlemen of the jury, you are to be governed by the evidence in this case, and are to be controlled by the preponderance of the evidence in this case.   If you believe from the preponderance of the evidence that Mrs. Lewis is mistaken, and that Mrs. Lewis, when that deed was all filled up, did negotiate the sale, or that she signed the deed knowing what land she was selling and what price she got for it, that she executed it regularly for the sale of the land, the paper being perfect, of course the defendant must recover.

Mr. Youmans: And if—

The Court: It is not right to have the matter reopened.   The testimony is for you, gentlemen of the jury.   Find your verdict according to the preponderance of the evidence, taking the law as I give it to you.

Verdict was for plaintiffs; and defendant appealed upon forty-four grounds, which assign error to the trial judge in the following particulars: 1. In permitting Mrs. King and Mrs. Reeves to impeach the validity of the deed to Miss Stolbrand.   2. In permitting Mrs. King to testify to conversations and transactions with B. I. Boone, now deceased.   3. In refusing the non-suit. 4. In excluding the record in Reeves v. Tappan.   5. In permitting plaintiffs to amend their complaint.   6. In ruling that the jury are not to be controlled by equitable considerations.   7. In ruling that the legal title was in plaintiffs and never had been in Mrs. King.   8. In his charge as to the effect of the receipt of the purchase money by Mrs. King.   9. In charging that plain-

tiffs and defendant claim from a common source of title. 10. In charging that the statute of limitations did not protect Mrs. Brayton. 11. In conveying to the jury his honor's impression of the facts.

*Messrs. Bachman & Youmans,* for appellant.

*Mr. H. C. Patton,* contra.

July 8, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action brought by the plaintiffs to recover possession of certain real estate, a lot of land in the city of Columbia, in the possession of the defendant. The plaintiffs claim title as devisees under the will of their uncle, Robert N. Lewis, and allege, in their complaint, that the defendant also claims title from the same source. In her answer the defendant, while denying each and every allegation, except as therein afterwards admitted, and asserting title in herself, admits that she has all the title to said lot ever owned by Robert N. Lewis, but alleges that she has other independent sources of title, and that said Lewis is not the source of title common to herself and the plaintiffs. For a further defence, she pleads the statute of limitations; and also that under the provisions of the will of Robert N. Lewis, the said lot of land was duly conveyed by Sarah B. Lewis, who had, by operation of law, become executrix thereof, for valuable consideration, to one Fannie L. Stolbrand, on the 27th of February, 1872, and that all the right, title, and interest of the said Fannie L. Stolbrand, who had intermarried with one E. M. Stoeber, was, on the 9th of October, 1878, duly conveyed to defendant, who since said date has held the premises adversely to all the world.

When the case was called for trial, one of the counsel for defendant moved for a continuance, upon the ground that his client had been unable to find the two original deeds, constituting her claim of title from Robert N. Lewis, and that the record of one of said deeds, to wit, the deed from Sarah B. Lewis, as executrix, to Fannie L. Stolbrand, did not show a seal affixed to the name of the grantor. Upon an intimation from the presiding judge

that the motion for a continuance would be granted, one of the counsel for plaintiff stated, "that in order to have the case tried at the present term of court, the plaintiffs would admit that the said deed bore a seal affixed to the grantor's name, and that the signature, for the purposes of this case, was in the handwriting of Mrs. Sarah B. Lewis. Upon this admission his honor ordered the case to trial."

The plaintiffs first offered in evidence a certified copy of the will of Robert N. Lewis, the terms of which, so far as pertinent to the questions involved in this case, will be hereinafter stated, as well as a certified copy of the will of Daniel B. Lewis, in which, after stating, amongst other things, that he desired that the will of his deceased brother, Robert N. Lewis, should be carried out as he had directed, the said Daniel B. Lewis appointed his wife, Sarah B. Lewis, executrix of his will, and she duly qualified as such. The plaintiffs then introduced in evidence a certified copy of a deed purporting to be a conveyance of the lot in controversy by Sarah B. Lewis, executrix, to Fannie L. Stolbrand, bearing date 27th of February, 1872, which purported to have been executed in the presence of B. I. Boone and G. M. Chapline, in consideration of the sum of $1,100, and to have been proved and recorded on the 6th of March, 1872, counsel saying: "We offer that to show by what chain of title the defendant claims, bringing her within the rule as to common source." The plaintiffs then put in evidence a certified copy of a deed purporting to be a conveyance of the premises in question by Fannie L. Stoeber (*née* Stolbrand) to the defendant, which was in the usual form, with general warranty, and purported to have been executed on the 9th of October, 1878, in consideration of $600, in the presence of two sub-cribing witnesses, probated and recorded 15th of October, 1878, counsel for plaintiffs saying that this deed also was introduced for the same purpose as the former.

Mrs. Sarah B. King, formerly Lewis, was then offered as a witness, who testified, amongst other things, as follows, after giving the names and time of birth of each of her children by her first marriage, by which it appeared that her eldest son, Robert, was born on the 30th of June, 1861, and that her youngest child was born on the 12th of May, 1870; that Robert N. Lewis died

19th of August, 1869, and her first husband, Daniel B. Lewis, died on the 15th of January, 1871; that after his death she became the executrix of his will, and having removed to the city of Greenville, placed all of her business in Columbia in the hands of her nephew, B. I. Boone, said to have been a lawyer. Counsel for plaintiff was then proceeding to interrogate this witness as to whether she ever signed any deed or other paper in the presence of Boone and Chapline, when counsel for defendant objected upon the ground that it was not competent for this witness to prove that she had never signed the paper, the execution of which had been admitted. After some colloquy between the court and the counsel, in the course of which the witness stated that she never signed any paper in the presence of Boone and Chapline, but her daughter did for her, the court used this language: "I understand that they object to any testimony that will go to prove that the deed was not duly executed by the grantor, inasmuch as that was the admission upon which they went to trial, that the deed was duly executed by the grantor, just as it purports to be. executed with the seal and everything regular. They have gone to trial with that understanding." To which counsel for plaintiffs replied: "We have gone to trial with the understanding that Mrs. Lewis executed that paper; wholly immaterial whether done by her daughter or by her. We have introduced these papers to show a common source of title. If there be any lawful defect in the deed, we don't waive that." To which one of the counsel for plaintiffs added that they did not propose to make any point upon the fact that the deed was signed by the witness's daughter instead of with her own proper hand.

Thereupon counsel were directed to proceed with the evidence; and the witness, after stating that the paper was signed by her daughter, Mrs. Reeves, in the presence of Boone and Chapline, by the direction of the witness, was asked to state the circumstances under which it was done, to which objection was interposed by defendant's counsel. After some discussion, the witness was allowed to testify, against defendant's objection, that the circumstances under which the deeds were signed were substantially as follows: Boone came up to Greenville, bringing with him a number of blank deeds for the witness to sign, repre-

senting that there was a four-acre lot in the suburbs of Columbia, not embracing the lot here in controversy, which he wanted to sell off in small parcels, and he had the witness to sign some sixteen or seventeen blank deeds to save him the trouble of bringing or sending up each deed as the several sales were effected   The witness was also allowed to testify, against defendant's objection, that Boone never reported to her the sales of any of the lots, nor did she receive any money from him as the purchase money of the lots; for while she did receive sundry sums of money from Boone, she understood it to proceed from the rents of the property in Columbia, and that she never heard of the Stolbrand sale until about two years prior to her examination as a witness, probably some time in 1889.   Mrs. Reeves, one of the plaintiffs, a daughter of Mrs. Sarah B. King, formerly Lewis, was allowed to testify, against defendant's objection, that some time in May or June, 1871, she signed her mother's name, by her direction, to some sixteen or seventeen blank deeds, in the presence of Boone and Chapline, and that she never signed her mother's name to any other papers.

Upon the close of the testimony on the part of the plaintiffs, counsel for defendant moved for a non-suit upon the following grounds: "1st. That the plaintiffs had failed to show sufficient title in themselves to justify them in going to the jury.   2nd. That the plaintiffs had shown such title in the defendant as would justify a non-suit."   The motion having been overruled, the defendant went into her testimony, which need not be set out here, as we will refer to so much of it as may be necessary in considering the several questions involved.   The charge of the Circuit Judge is set out in the "Case," and should be embraced in the report of this case; and we will not now undertake to state even the general tenor of his instructions to the jury, but will only refer to such portions, in the progress of the discussion, as may be necessary to a proper understanding of the views which we take of the case.   The jury having rendered a verdict in favor of the plaintiffs, defendant appeals upon very numerous grounds (forty-four in number), set out in the record, which need not be separately stated or considered.

First, as to whether there was any error in refusing the mo-

tion for a non suit. There can be no doubt that in an action of this kind, it is necessary for the plaintiffs to show not only title to the premises in controversy, but also a right to the immediate possession thereof. *Geiger* v. *Kaigler*, 15 S. C., 262. Defendant contends that the plaintiffs have failed to show either title or the right to possession. The claim of plaintiffs is derived from, and rests solely upon, the terms of the fourth clause of the will of Robert N. Lewis, which reads as follows: "Fourth. I give, will, devise, and bequeath all the rest, remainder, and residue of my estate, both real and personal, to my dear brother, Daniel B. Lewis, of the State of Texas, in trust nevertheless upon the following uses and trusts, that is to say, for the use, benefit, and behoof of the children of my said brother, to be divided amongst them share and share alike, and not to be subject or liable to any of the individual debts, liabilities, or contracts of my said brother. I nominate, constitute, and appoint my said brother, Daniel B. Lewis, as the executor of this my last will and testament, with full power to execute the same, and with full power to sell any of my real or personal estate, except the lot specially devised to Emily Bateman and Nicholas Eugene Lewis; and also with full power to compound debts due my estate, without application to any courts of law or equity; and also to invest and reinvest the proceeds of the remainder and residue as trustee for his children at his discretion."

The leading inquiry presented under this clause is whether the legal title to the lot of land now in controversy, which it is conceded constituted a part of the rest, residue, and remainder of the estate of the testator, Robert N. Lewis, is in the plaintiffs, who, as the children of Daniel B. Lewis, are the beneficiaries under this clause, or in their trustee, whoever he may be; for if in the former, then the plaintiffs, under the testimony which they adduced, made a *prima facie* showing sufficient to escape a nonsuit, unless their testimony at the same time showed that such legal title had passed out of them before the commencement of this action, as contended for in the second ground in support of the motion for a non-suit; but if in the latter, the trustee, then it is clear that the plaintiffs have failed to show any legal title in

themselves as devisees, in which contingency it would become necessary to consider the question raised by the objection made to the amendment allowing plaintiffs to insert in their complaint allegations appropriate to that view.

It is very obvious that this question turns upon the result of the inquiry whether the case falls within the operation of the statute of uses. In what cases the statute will execute the use, is a subject which has been before this court in a number of cases recently, one of the latest probably being *Ayer* v. *Ritter*, 29 S. C., 135, where the authorities in this State were reviewed; and the rule there stated is "that the statute will not execute the use as long as there is anything remaining for the trustee to do, which renders it necessary that he should retain the legal title in order fully to perform the duties imposed upon him by the trust." See, also, *Carrigan* v. *Drake*, *ante* 354, which contains the last utterance of the court upon the subject. Under this rule the inquiry is, whether the trustee had any duties to perform which rendered it necessary that the legal estate should remain in him in order to secure the proper performance of such duties. It will be observed that, in the fourth clause of the will, the same person is invested with two distinct and separate offices—that of executor of the will and that of trustee for his children, and this must be kept in mind in order to avoid confounding the powers and duties of the one with those of the other. For instance, the power to sell is vested in Daniel B. Lewis as executor, and not as trustee, and hence it would not have been necessary for him to retain the legal estate in order to exercise that power. The estate was not devised to the executor for the purpose of enabling him to sell, but he was simply invested with the power to make the sale, and in such case the legal title vests in the heirs or devisees, as the case may be, until the power of sale is exercised. *King* ads. *Ferguson*, 2 Nott & McC., 588; *Ware* v. *Murph*, Rice, 54.

This power of sale was not given to the trustee but to the executor (*Reeves* v. *Tappan*, 21 S. C., 1), and, therefore, it cannot be claimed that the trustee must retain the legal estate in order to enable him to exercise that power. The trustee was not directed to receive the rents and profits and apply the same,

either in specified portions or at his discretion, to the use and
benefit of his children, nor was he directed to make the division
contemplated amongst his children ; for the property is given to
the trustee "for the use, benefit, and behoof of the children of
my said brother, to be divided amongst them share and share
alike." These words in respect to the division of the property,
do not impose upon the trustee the duty of making such division,
but simply indicate the shares which the children are entitled
to take. The only other provision in the will which could by
any possibility be construed as investing the trustee with any
power or imposing upon him any duty, is the "power to invest
and reinvest the proceeds of the remainder and residue as trus-
tee for his children, at his discretion." This must necessarily
refer to such proceeds as the trustee might receive from the
executor after the estate had been settled up, and could not pos-
sibly refer to the real estate in question, over which the trus-
tee, as such, had no power of sale or disposition. We do not see,
therefore, that the trustee was invested with any power or
charged with any duty which rendered it necessary that he
should retain the legal estate, and hence, under the rule above
stated, such estate passed by the operation of the statute of
uses directly to the plaintiffs as the beneficiaries under the devise
contained in the will, and hence this first objection to the plain-
tiffs' title cannot be sustained.

The next inquiry is, whether the plaintiffs had the right to the
possession of the property in question. The general rule is, that
the title carries with it the right to the possession of real estate,
though there are cases in which this general rule does not apply. We
must, therefore, inquire further whether there is anything in this
case to take it out of the operation of the general rule. We do
not find anything in the will which shows an intention that the
executor should retain the possesion of the estate for any purpose,
as in *Geiger* v. *Kaigler, supra;* for certainly the mere power of
sale conferred upon the executor was in no wise inconsistent with
the retention of possession by the holders of the legal title until such
power was exercised. There is no intervening right conferred
upon any one by the will which would interfere with or prevent
the legal owners' right of possession. We do not think, there-

fore, that this objection to the maintenance of the action can be sustained.

It is insisted, however, that both of the questions hereinbefore considered, have been heretofore determined adversely to the plaintiffs in the case of *Reeves* v. *Tappan*, 21 S. C., 1. We do not so understand that case. There the only questions considered and determined by this court were whether the executrix of Daniel B. Lewis, who was the executor of Robert N. Lewis, could exercise the power of sale conferred upon the first executor, and if so, whether the special provision in the will of Daniel B. Lewis, authorizing his executrix to sell all the lands of the estate of Robert N. Lewis, outside of the city of Columbia, limited her power of sale to such lands. In that case the court decided that prior to the change in the law by the act of 1880 (17 *Stat.* 363), the executor of an executor represented the first testator and was invested with all the powers conferred by the will of the first testator upon his executor. It was, therefore, held that Mrs. Sarah B. Lewis, as executrix of Daniel B. Lewis, was invested with all of the powers conferred upon Daniel B. Lewis, as executor of Robert N. Lewis, and could, and did make, a valid sale and conveyance of the lot of land, belonging to the estate of Robert N. Lewis, which was in controversy in that case, and that her power of sale was not limited by the provision in the will of Daniel B. Lewis above mentioned. While, therefore, the case of *Reeves* v. *Tappan*, *supra*, must be regarded as determining conclusively that Mrs. Sarah B. Lewis, as executrix, had the power to sell any of the real estate belonging to the estate of Robert N. Lewis, and did make a valid sale and conveyance of the lot in controversy in that case, the question whether such executrix has made a valid sale and conveyance of another and different lot of land, remains open and unaffected by the decision in the former case.

This brings us to the consideration of the question presented by the second ground of the motion for a non-suit, viz.: Did the plaintiffs show that their title to the lot in controversy had been divested by the sale and conveyance of the same by Mrs. Sarah B. Lewis to the defendant's grantor, Miss Stolbrand. Assuming, as we must assume, since the decision in

*Reeves* v. *Tappan, supra,* that Sarah B. Lewis, as executrix, had the power to make such sale and conveyance, the important inquiry is whether, in fact, she did make such sale and conveyance. There can be no doubt that a paper, regular in form (except the seal which was admitted), purporting to be a conveyance of the lot in question from Sarah B. Lewis, as executrix, to Fannie L. Stolbrand, together with a deed, in every respect regular, purporting to convey the same lot to the defendant, by Miss Stolbrand (then Mrs. Stoeber), were offered in evidence by the plaintiffs themselves, which deeds had been spread upon the records, the former since the 6th of March, 1872, and the latter since the 15th of March, 1878. Counsel for plaintiffs, however, in offering these deeds in evidence, stated that they were offered for the purpose of showing that both parties claimed from a common source of title; but we think that the rule is well settled that whatever may be the declared purpose for which a piece of evidence, either oral or documentary, may be introduced, it is entitled to have whatever effect it would have, if no such purpose had been declared. See *Carrier* v. *Hague,* 9 S. C., 454; *Geiger* v. *Kaigler, supra,* and the authorities there cited. It seems to us, therefore, that when these deeds were offered in evidence by the plaintiffs themselves, if nothing else appeared, they proved themselves out of court, for they not only showed that they had been divested of the legal title, but that the same had been vested in the defendant.

For the purpose, probably, of meeting this difficulty, the plaintiffs then undertook to show the circumstances under which these papers, purporting to be deeds, had been signed, with the view of showing that they could not operate as conveyances; and for this purpose produced Mrs. Sarah B. King (formerly Lewis), the person named as grantor in the first deed, who testified against defendant's objection, as has been hereinbefore stated. The first question upon this branch of the case is, whether such testimony is competent under, and in face of, the admissions upon which the case was ordered to trial. The nature and extent of those admissions have been set out above in our general statement of the case, and need not, therefore, be repeated here. While it does seem that the admission, as first stated by one of the

counsel for the plaintiffs, only went to the extent of admitting that there was a seal affixed to the grantor's name, and that the signature was in the handwriting of Mrs. Sarah B. Lewis, and did not go to the full extent of admitting the due execution of the deed, which would imply not only a signing and sealing, but a delivery in the presence of the two subscribing witnesses, yet it is very manifest, from the language used by the Circuit Judge, as well as by the senior counsel for the plaintiffs, quoted above, that the admission was understood both by court and counsel to go to the full extent of admitting that the deed was duly executed.    It seems to us that in view of this admission which, however innocent plaintiffs' counsel may have been of such intention, as we assume them to have been, was calculated to mislead the counsel for defendant, it was error to admit testimony impeaching the execution of a deed in a case which had been ordered to trial, with the understanding that the execution of such deed was admitted.    For a like reason we think that the testimony of Mrs. Reeves, as to the circumstances under which the Stolbrand deed was executed, was improperly admitted.

Although this would be conclusive of this appeal, and necessarily involves a new trial, yet it may be proper that we should consider briefly the other questions presented, though time will not permit any extended consideration of such questions.    The testimony of Mrs. Sarah B. King (formerly Lewis) was also objected to upon the ground that a grantor should not be permitted to impeach the execution of his own deed, except for fraud.    It will be observed that Mrs. King is not a party to this cause, and has no legal interest in it, so far as we can discover ; and also that the plaintiffs do not claim under or through her.    The precise question, therefore, is whether, in a case between third persons, a grantor in a deed. under which one of the parties claim, is a competent witness to impeach the execution of such deed.    While there is, or has been, some conflict of authority in England and in some of the American States as to this question, we think it has been settled here that such testimony is competent.    *Knight* v. *Packard*, 3 McCord, 71 ; *Simmons* v. *Parsons*, 1 Bail., 62.

Under the views hereinbefore presented, the question as to the

26—36

propriety of allowing the amendment, especially as to the time
and manner in which it was done, cannot arise; for if, as we
have held, the legal title passed by the operation of the statute
of uses to the plaintiffs, the amendment was altogether unneces-
sary, and whether properly or improperly allowed, cannot affect
the case. So, too, under that view, it is obvious that the
plea of the statute of limitations could not have been
allowed; for the rule is well settled that the minority of
one tenant in common will protect the rights of his co tenants.

In view of the fact that the claim of title by defendant
through adverse possession was, as we have seen, properly re-
jected by the Circuit Judge, and that the only other title
relied upon by defendant was that derived from Robert
N. Lewis, under whom alone the plaintiffs claim, we see no
error in the instructions given to the jury as to the matter of com-
mon source of title, and we do not deem it necessary to consider
in detail the various objections made by appellant to what the Cir-
cuit Judge said upon this point.

While the question as to the validity of the Stolbrand deed, if
the circumstances attending its execution had been proved by
competent evidence, becomes unimportant now under the
views hereinbefore presented, yet as it has been fully and
elaborately argued and may arise again in the new trial
which will be ordered, it is, perhaps, proper that it should now
be determined. Without going into any discussion of this im-
portant and interesting question, which could not be done with-
out extending this opinion to an unreasonable length, it is suffi-
cient for us to say that we think the authorities cited by the
counsel for respondents[1] are sufficient to show that where an
executor, in whom no legal estate is vested, undertakes to con-
vey real estate, under a power contained in a will from which he

[1] Reeves v. Tappan, 21 S. C., 9; Lamar v. Simpson, 1 Rich. Eq., 71;
Coombes Case, 9 Co., 75; Bacon Abridg., title authority D; Story Agency,
§ 13; Paley Agency, 175, note a; 2 Wms. Ex'rs, 944; Berger v. Duff, 4
Johns. Ch., 368; Black v. Erwin, Harp., 411; Drury v. Foster, 2 Wall.,
24; Upton v. Archer, 41 Cal., 87; Vaca Valley R. R. Co. v. Mansfield, 84
Cal., 561; Schintz v. McManamy, 33 Wisc., 299; Chauncy v. Arnold, 24
N. Y., 330; Allen v. Withrow, 110 U. S., 128; Ayres v. Probasco, 14
Kans., 175; Mills v. Williams, 16 S. C., 593.

obtains his appointment, by signing, sealing, and delivering a deed in blank, and entrusting the same to an agent to be filled up with the name of the purchaser, the amount of the consideration, and the description of the property, after such agent has, without the knowledge or subsequent approval of the executor, negotiated a sale of such property, such deed will not pass the *legal* title of the testator; but this conclusion must be regarded as confined to the circumstances stated.    But whether a Court of Equity would aid such a defective execution of the power of sale under the circumstances which may be made to appear upon the subsequent trial of this case, and what would be the rights of a purchaser for valuable consideration without notice under such circumstances, are points upon which we do not design to express or intimate any opinion either one way or the other; but leave is hereby granted to the defendant, if she shall be so advised, to apply to the Circuit Court for an order to so amend her answer as to raise these points in due and proper form.

As to the question of ratification it is very clear, both from reason and authority, that knowledge was an essential element entering into the consideration of the question whether Mrs. Lewis had ratified the Stolbrand sale by receiving the purchase money, and hence the request to charge, omitting that essential element, was properly refused.    But even if such purchase money was not knowingly received by Mrs. Lewis as executrix, but was received by her agent, entrusted by her with the management of the affairs of her testator's estate, and by such agent applied to the payment of debts or legacies, the very purpose for which the executrix was authorized to sell, then the purchaser would have an equity to claim that the sale should be validated.    We think, therefore, that there was error in that portion of the judge's charge in reference to the receipt of the purchase money.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.