7273

MERCK v. MERCK.

1. LIMITATION OF ESTATES.—A DEED in the usual warranty form, except after the description of the property is this sentence, "this deed is not to go into effect until after my death," conveys a fee to grantee with reservation of life estate to grantor.

2. EVIDENCE—FRAUD—DECLAMATIONS.—That one having conveyed land had executed a mortgage on it to secure attorney's fees in an ·expected attack on his title; that he had rented the· land to another; that his tax returns showed he had sold a part of the land, are made competent as declarations of a grantor in his favor, after introduction by the other side of evidence tending to show this grantor had procured the deed to him by fraud and stole it from the grantor's possession to place it on record.

3. FRAUD—DEEDS.—In a case between third persons, a grantor or a grantee in a deed, under which one of the parties claims, is a competent witness to impeach such deed.

4. IBID.—IBID.—A deed duly executed but procured by fraud is binding on the heirs of the grantor in favor of a third person for value without notice of the fraud.

5. ESTOPPEL—EVIDENCE.—May one who has parted with his title to land be permitted to say he had made a trade for a part of the land between his grantor and a third person and witnessed the execution of the deed and that his grantor did not ask his consent, but still recognized the land as his own?

6. DEEDS—DELIVERY—NEGLIGENCE—ESTOPPEL.—Where one executes a deed complete on its face and lacking only delivery to make it complete and negligently leaves it where the grantee could take it,

and he does so and has it recorded, the grantor is estopped from denying its delivery.

7. IBID.—IBID.—LIMITATION OF ESTATES.—A deed conveying a fee but reserving to grantor a life estate should be delivered at time of execution and not after death of grantor.

Before KLUGH, J., Pickens, March term, 1908. Reversed.

Action by Daniel M. Merck *et al.* against Lawrence C. Merck *et al.* From judgment for Defendant Mann, plaintiffs appeal.

*Messrs. Breazeale & Long, J. E. Boggs,* and *Cothran, Dean & Cothran,* for appellants. The latter cite: *Construction of deed from Blumer Merck to L. C. Merck:* 54 S. C., 361; 4 McC., 12, 198; 4 DeS. Eq., 617, 264; 10 Rich., 66; 24 S. C., 228; 17 N. W. R., 522; 66 S. W. R., 536; 51 Pa., 126; 26 Pac., 450; 66 Ga., 317; 76 N. W., 411; 75 S. W., 677; 53 At., 638; 4 Baxt., 357; 11 Rich., 130; 61 N. W., 673; 1 Rich., 165; 2 Hilliard, 476. *L. C. Merck is estopped from testifying against his deed:* 54 S. C., 127; 1 Green Ev., 318; 3 S. C., 577; 43 S. C., 370; 1 Term R., 296; 1 Conn., 260; 1 Phil. Ev., 39; 5 N. H., 181; 11 Mass., 375; 17 Ark., 179; 2 Bay., 23; 3 Des., 223; 2 Bay., 93; 1 Mill, 277, 423; 1 McC., 350, 557; 2 McC., 173, 178, 214, 241; 3 McC., 71; 1 Bail., 62; 36 S. C., 384. *Charge as to delivery of deed:* 11 S. C., 56; 23 S. C., 89; 44 S. C., 372; 66 Me., 316; 107 Mo., 130; 88 Col., 283; 17 S. E. R., 213; 3 L. R. A. (N. S.), 645; 13 L. R. A., 64; 19 S. E. R., 400; 9 Ency., 153, 157; 73 S. C., 232; 8 L. R. A., 1066; 69 Vt., 246; 30 S. E. R., 687; 83 S. W. R., 747; 223 Ill., 438; 88 Pac. R., 806; 11 Am. R., 592; 87 Pac., 841; 61 At. R., 434; 55 At. R., 1091; 99 N. W. R., 389; 51 N. E. R., 614; 53 N. E. R., 551.

*Mr. Jas. P. Carey,* contra, cites: *L. C. Merck is estopped from impeaching the deed to him:* 54 S. C., 127. *As to*

*delivery of this deed:* 54 S. C., 127; 11 S. C., 56. *Construction of this deed:* 5 Rich., 189; 2 Strob. Eq., 378; 10 Rich. Eq., 222; 12 S. C., 564; 54 S. C., 353; 49 Am. St. R., 219; 59 S. C., 560; 1 Rich., 161, 170; 4 Kent, 465, 493-495. *Fraud and notice:* 54 S. C., 127; 6 Crouch, 133; 2 Pom. Eq. Jur, secs. 777, 754; 70 Am. St. R., 867; 1 Hill Ch., 293; 34 S. C., 559; 64 S. C., 354; 14 S. C., 312.

August 10, 1909. The opinion of the Court was delivered by

MR, JUSTICE WOODS. The plaintiffs, as heirs at law of Blumer Merck, brought this action for the partition of a tract of land, containing one hundred and fifty-six acres, alleged in the complaint to have been the property of Blumer Merck at the time of his death. The defendant Lawrence C. Merck is a son of Blumer Merck, and the defendants Ella Burton, B. Stewart and K. Stewart are the children of Parthena Stewart, who predeceased her father, Blumer Merck. W. B. Mann was made a party defendant as the grantee of the interest of Lawrence C. Merck, alleged in the complaint to be one-eighth. Mann alone answered the complaint, alleging that none of the other parties to the action have any interest in the land, and that he is the owner thereof in fee simple. On the trial of the issue of title thus made, the jury found a verdict in favor of the defendant Mann, and the Circuit Judge subsequently made a decree in accordance with the verdict.

The title of Blumer Merck to the land was admitted, and Mann claimed title from him through the following successive conveyances: (1) deed from Blumer Merck to his son, the defendant Lawrence C. Merck, dated 4th January, 1902; (2) deed from Lawrence C. Merck to M. F. Hester, dated 4th September, 1905; (3) deed from M. F. Hester to A. J. Boggs of an undivided half interest, dated 27th November, 1905; (4) deed from M. F. Hester and A. J. Boggs to W. B. Mann, dated 3d December, 1906. The

cause depends on the validity of the deed from Blumer Merck to Lawrence C. Merck.  If that deed was valid, then the defendant Mann had a good title to the entire land when the action was brought.  The plaintiffs attacked the deed, alleging it to be invalid for these reasons: (1) that it was never delivered; (2) that if delivered, the delivery was in the presence of only one witness; (3) that the consideration mentioned in it was never paid; (4) that it could not have effect as a deed, because it showed on its face that it was not to take effect until after the death of Blumer Merck; (5) that it was procured by M. F. Hester and Lawrence C. Merck from Blumer Merck, when he was so feeble of mind and body as to be incapable of transacting ordinary business, for the purpose of defrauding the heirs of Blumer Merck of their inheritance.  In support of this fifth allegation, it was alleged that Lawrence C. Merck conveyed to M. F. Hester in pursuance of the scheme of fraud, and that the defendant W. B. Mann had notice when he purchased that the deed to Hester was fraudulent and void, and that plaintiffs would deny its validity on account of the alleged fraud.

If the deed from Blumer Merck shows on its face that it was not to take effect until his death, then it was ineffectual as a conveyance and the defense would have no foundation.  The primary issue then is on the construction of the deed.  It is in the usual form of a conveyance of land with the warranty clause, except that it contains after the description of the property the sentence: "This deed is not to go into effect until after my death."

We shall not enter into a discussion of the numerous authorities cited in the argument, because there are two cases decided in this State which are conclusive.  In *Alexander* v. *Burnett*, 5 Rich., 189, 196, the words used in the deed were: "It is clearly and unequivocally understood that the aforesaid deed of gift is to be of no effect whatever until

I, the aforesaid J. B., depart this life." This is the conclusive reasoning of Judge Evans in delivering the opinion of the Court: "Now what rule of law interferes so as to prevent us from giving to this paper, as a deed, the same construction as was given in *Jaggers* v. *Estes* and *Duke* v. *Dyches,* to vest a present title in Anne Burnet, subject to the right of Johnson to the use and enjoyment during his life? The words of restriction will thus have all the effect which I suppose was intended, viz.: to reserve to himself the use and control during his life, and, until that event, was to have no effect so as to give any right of possession. To give it the effect of changing entirely the legal import of all the words which he had before used would be a very strained and unnatural interpretation, such as is not required to give effect to any conceivable intention which he could have had, unless we suppose he was entirely ignorant of the meaning of words; that when he said *I have given, granted, bargained and sold,* he meant only I give and bequeath; when he said I warrant, he meant nothing; when he said this *deed of gift,* he meant this will or that he meant to vest no present title when he delivered the deed and the negro along with it; which were essential to a deed, but wholly unnecessary to a will."

In *Williams* v. *Sullivan,* 10 Rich. Eq., 217, 224, Mrs. Sullivan, in a paper having the form of an absolute conveyance with warranty, gave to John Sullivan, his heirs, etc., "the following negro property at my death, namely, Lucy and her six children, together with their increase." The Court held that the title to the property passed on execution of the paper; the right of use and possession only being postponed until the death of Mrs. Sullivan. So in this case there can be no doubt that Blumer Merck intended to execute a legal instrument, conferring upon Lawrence C. Merck the right to the possession and enjoyment of the land after his death. He could only do this by deed or will. It is certain from the language used that he meant to make

a deed, not a will. It does not strain the meaning of the words, "this deed is not to go into effect until after my death," to construe them in connection with the whole paper, as expressing the intention of the grantor to say: I do mean to make a good deed of conveyance to Lawrence C. Merck, but I hold back from him for myself the beneficial rights of possession and enjoyment of the land while I live.

The deed was properly construed by the Circuit Judge as in form a conveyance of the fee to the grantee with the reservation of a life estate to the grantor. All exceptions alleging error on this point in the refusal to direct a verdict and in the charge to the jury must be overruled.

At the beginning of the trial Blumer Merck's ownership of the land up to 1902, his death, and the allegations of the complaint as to the names of his heirs were admitted. Thereupon the plaintiffs proved Blumer Merck's possession at the time of his death, and closed their case. The Court then held that the defendant Mann must develop his case in full on all the issues presented. Thus he was required to introduce not only his evidence tending to prove the execution of the deed from Blumer Merck to Lawrence C. Merck, but also to meet in advance the evidence of plaintiff on the issue of fraud. Anticipating that Lawrence C. Merck would testify for defendants that he and Hester had conspired to defraud his father and his brothers and sisters by stealing the deed from the old man and having it recorded, the defendant Mann introduced as evidence of Lawrence C. Merck's assertion of title in himself: (a) a mortgage of the land, given by him to T. J. Mauldin to secure a note for attorney's fees for defending an attack he expected his brothers and sisters to make on his title; (b) a contract made by him with Hester for the rent of the land; (c) his receipt for rent given after the death of Blumer Merck; (d) his tax return for 1906, showing that he had sold 135 acres of the land to M. F. Hester. All this was objected to as incompetent. It might have been the

duty of the Circuit Court to have this testimony stricken out, as declarations in favor of his own title by a grantor, under whom Mann claimed, if the plaintiffs had not introduced and relied on the testimony of Lawrence Merck, to the effect that he had procured the signing of the deed by fraud, and had subsequently stole it from his father's trunk to have it recorded. When this evidence was offered by the plaintiff, the evidence objected to became competent to discredit Lawrence C. Merck's testimony as to his own turpitude.

The fifth exception is as follows: "The presiding Judge erred in holding that as L. C. Merck had executed a warranty deed of the premises to the person through whom W. B. Mann claimed title, he was estopped from testifying to any matter calculated to impeach the deed from Blumer Merck to him and in ruling that the testimony of L. C. Merck tending to show that the deed was not signed in the presence of two witnesses and that it was never delivered to him, was incompetent." The ruling of the Circuit Judge no doubt rested on the authority of *Garrett* v. *Weinberg,* 54 S. C., 127, 31 S. E., 341. In that case the Court said: "Upon the same principle, a grantor, after conveying land, with full covenant of warranty, should not be heard as a witness to impeach, disparage or restrict the title which he has by his solemn deed conveyed." We are inclined to think that the plaintiffs had the benefit of the testimony of Lawrence C. Merck on this point; and assuming the ruling of the Court to be erroneous, the record is not convincing that there was such material injury to the plaintiff as would warrant the Court in ordering a new trial on that ground alone. But as there must be a new trial on other grounds, and as this question may be important on the second trial it will be considered.

The question is, whether a grantee of land, who afterwards conveyed to another, is a competent witness in an

action between his grantee and a third party to testify to facts tending to prove the invalidity of his own deed. The authorities holding that in such circumstances the grantee is not competent all go back to the case of *Walton* v. *Shelley,* 1 D. & E., 298, where it was held, "a person is not a competent witness to impeach a security that he has given, though he is not interested in the event of the suit." Separate concurring opinions were delivered by Lord Mansfield and Justices Willes, Ashhurst and Buller, all resting the rule on public policy. It is not surprising that an adjudication on a point of evidence strongly expressed by such high authority should receive for a time recognition outside of England. In the English courts, however, this case, decided in 1785, was expressly overruled in 1797 by the case of *Jordaine* v. *Lashbrooke,* 7 D. & E., 602. In this State the question was fully considered in *Croft* v. *Arthur,* 3 DeS., 225, and *Knight* v. *Packard,* 3 McC., 71, 77, and the doctrine of *Walton* v. *Shelley* expressly repudiated. In delivering the opinion of the Court in *Knight* v. *Packard,* Judge Nott remarks that when *Walton* v. *Shelley* was decided, the line of distinction between competence and credibility had not by any means been distinctly drawn, and then states the argument in favor of the competency of the evidence in this forcible manner: "The great objection that a person shall not be permitted to develop his own shame appears to me to be founded on mistaken principles. It is not a question whether a party shall be permitted to take advantage of his own wrong, but whether a witness may not be required or permitted to disclose a fraud, although he may have been party to it. How far such a circumstance may go to affect the credit of the witness is a distinct question. I am not aware of any rule of law which renders a witness incompetent on account of his having committed a fraud, unless he has been convicted in a court of justice of perjury or some infamous crime. A witness may be competent and yet unworthy of credit. The objection

ought, therefore, to go to his credibility and not to his competency."

The case of *Knight* v. *Packard* was followed in *Lightener* v. *Martin*, 2 McC., 214, *Simmons* v. *Parsons*, 1 Bail., 62, and other cases. Those cases which involve usury are not cited, because it might be thought that without respect to the principle here involved, the maker of the usurious contract would be competent to testify to usury in the contract, under the term of Act of 1777, 4 Stat., 363, which made testimony of the maker of the contract competent on that point.

In *Reeves* v. *Brayton*, 36 S. C., 385, 401, 15 S. E., 658, Chief Justice McIver in delivering the opinion of the Court uses this language: "The precise question, therefore, is whether, in a case between third persons, a grantor in a deed, under which one of the parties claim, is a competent witness to impeach the execution of such deed. While there is, or has been, some conflict of authority in England and some of the American States as to this question, we think it has been settled here that such testimony is competent. *Knight* v. *Packard*, 3 McC., 71; *Simmons* v. *Parsons*, 1 Bail., 62."

It is not easy to believe that the great Chief Justice, so familiar with the decisions of the Court, and so strong in his adherence to the principles adjudged by them, meant by the language used in *Garrett* v. *Weinberg*, *supra*, that *Reeves* v. *Brayton*, and all the decisions upon which that case rested should be overruled. Had it been his intention to recommend that to the Court, there would certainly have been some direct discussion of these cases. Yet this is the language used in *Garrett* v. *Weinberg:* "The rule is well settled that the declarations of a grantor, made after he has parted with the possession of the thing sold in disparagement of his title, are not competent against his grantee or those claiming under him—*Kittles* v. *Kittles*, 4 Rich., 422; *Renwick* v. *Renwick*, 9 Rich., 50; *Hobbs* v. *Beard*, 43

22—83

S. C., 370, 21 S. E., 305.  Upon the same principle, a
grantor after conveying land with full covenant of war-
ranty, should not be heard as a witness to impeach, dis-
parage or restrict the title which he has by his solemn deed
conveyed.  It seems to us, therefore, that there was error
on the part of the Circuit Judge in receiving the testimony
of John S. Moore, tending to contradict his deed, by show-
ing that while he had conveyed the entire interest in the
land to Mr. Moise, he was only entitled to and only had a
right to convey an undivided one-third interest."  The prob-
able explanation of the apparent inconsistency between
*Reeves* v. *Brayton* and *Garrett* v. *Weinberg* is that in *Gar-
rett* v. *Weinberg* the witnesses who were the grantors in
the deed in question were allowed to testify that the deed
purporting to convey the whole land was intended to convey
only one-third.  Such testimony was incompetent on the
principle that parol testimony from any source is not com-
petent to contradict a written statement.  No doubt that
which was prominent in the mind of the Court was that
the witnesses could not testify that a deed which expressed
the conveyance of the entire land was meant to convey only
a one-third interest.  Quite a different principle is involved
in the admission of evidence which tends to show that a
paper in form of a deed was never one in fact, for wan\
of delivery; or if a deed, that it should be annulled for fraud
or mistake.

As to this principle, the rule of reason and of general
authority is that stated by Chief Justice McIver in *Reeves*
v. *Brayton,* namely, that in a case between third persons a
grantor or a grantee in a deed, under which one of the
parties claims, is a competent witness to impeach such deed.
Nothing can be added to the conclusive reasoning of Judge
Nott in *Knight* v. *Packard.*  But one illustration may make
the principle more evident, and show how the exclusion of
such testimony would deny to the Courts an important
means of investigation, especially in cases of fraud.  A's

creditors attack his deed to B as fraudulent.   A repents and is willing to testify that the deed was without consideration. To deny the creditors the benefit of his testimony would certainly be unjust.   It would be indeed a strange state of the law that a third party could testify that A, while still in possession of the land, had admitted to him the existence of facts constituting fraud (*McCord* v. *McCord,* 3 S. C., 577 : *Richardson* v. *Mounce,* 19 S. C., 477) ; and that A himself could not testify directly to the facts constituting the fraud. The fifth exception is sustained.

We can see no ground for the position taken in the sixth exception, that the title of Mann, regarded as that of a subsequent purchaser for value, would be defeated by the fraud in the deed from Blumer Merck to Lawrence C. Merck, even if acquired by Mann without notice of the fraud.   The instruction was given that legal execution and delivery were necessary to the validity of the deed from Blumer Merck.   There can be no doubt that if this deed was duly executed, a subsequent purchaser for value would be protected against Blumer Merck and his heirs, though the deed from him might have been procured by fraud.   *Black* v. *Childs,* 14 S. C., 312.   This is true as a general proposition of law, and if the plaintiffs wished a further instruction, as to whether facts were known to Mann sufficient to put him on inquiry, they should have submitted a request covering that point.

The seventh exception assigns error in the exclusion by the Circuit Judge of the "testimony of L. C. Merck to the effect that when Blumer Merck sold a part of the land in question covered by his deed to L. C. Merck, Blumer Merck recognized the land as still his own and did not ask L. C. Merck's consent to the sale."

These questions and answers appear in the evidence of Lawrence C. Merck: "Q. Were you present when he sold four acres to Rice?   A. He told me to make the trade with Rice.   We did the talking and he asked me who was to

make the papers, and I told him the old man, and he went and talked to him. Q. Did he or not ask you to consent to it? A. No, sir."

The answer was objected to, and the Court held it incompetent, but it was before the jury and no motion was made to strike it out. In addition to this, the witness testified, without objection, that he witnessed the deed from his father to Rice, that he was not consulted about it, that he took the message from the old man to Rice that he could have the land. There is no foundation for the exception.

On the question of delivery, the plaintiffs submitted the following request: "Even if properly executed, the deed does not have effect as a deed unless it be shown that it was duly delivered by Blumer Merck to L. C. Merck or to some one for him. If Blumer Merck never parted with or intended to part with possession of the deed; if he retained possession of it, placed it away with his papers and never delivered it to L. C. Merck or to any one for him; if while it was in Blumer Merck's possession it was surreptitiously taken away from his place of safekeeping without his knowledge or consent and placed on record; I charge you that under these circumstances the law declares that the deed has not been delivered and is, therefore, invalid." This is correct, as a general statement of the law. *Carrigan* v. *Bird,* 23 S. C., 89; *Johnson* v. *Johnson,* 44 S. C., 372, 22 S. E., 419; 1 Devlin on Deeds, sec. 267; 9 Am. & Eng. Enc., 155. Counsel for defendant now insists, however, the request was properly refused, because it left out of view the question of estoppel from negligence. His argument is, that Blumer Merck and his heirs might have been estopped from disputing Mann's title by negligence on his part in making a deed complete on its face, and lacking only delivery to make it a good conveyance, and then leaving it where the grantee, named in the paper, could easily take it, and thus induce others to accept him as the real owner of the land; and that, therefore, Mann's title might

be good even if the deed of Blumer Merck had never been delivered. Neither the requests nor the charge of the Circuit Judge indicate that the issue of negligence was made on the trial, and it may be unfair to appellants to say it should have been incorporated in this request. But it was earnestly pressed in the argument that the issue of negligence was made on the trial as arising out of the evidence. That being so, the request above quoted was not sound with the question of negligence left out of view.

The plaintiffs submit the following extract from the charge is unsound as a legal proposition because it is too broad as applied to the issues made in this case: "If a man makes a deed and lays it down, and intending that the grantee shall take it as a conveyance to the property, and he takes it from where the grantor placed it, that is as much a delivery in law as if he had actually delivered the deed to the grantee. A deed may be signed and witnessed and delivered at some future time. It may be executed and put away for the purpose of being delivered at some future time, and if it is, and the man puts it at some particular place, intending for the grantee to take it away at some future time, or upon the happening of some future event, and that happens, and the grantee takes it then, that is a delivery of the paper in all intents and purposes of the law." The instruction stated the law correctly, except that it would make valid a deed signed by the owner of the land and kept in his control with the intention that delivery should take place after the grantor's death. It is essential to delivery that the deed should pass beyond the control of the grantor. If the grantor retains the custody and control during his life, the paper can not have effect as a deed at his death. The principle is quite plain and the numerous authorities supporting it will be found cited in 1 Devlin on Deeds, Sections 279 and 279a, and in other text-books. One of the material issues here was, whether Blumer Merck signed the deed without delivery, intending that it

should be retained in his custody and control until his death, and only then delivered to Lawrence C. Merck. Indeed, there is no other possible future event suggested by the evidence which Blumer Merck could have had in view as fixing the time of delivery. The instruction, therefore, was equivalent to saying to the jury that there was a good delivery if Blumer Merck signed the deed without delivering it and kept it in his own house with the intention that it should be taken at his death by Lawrence C. Merck. This, as we have seen, is not a correct statement of the law.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and that this cause be remanded to that Court for a new trial.

MR. JUSTICE GARY *dissents.*