## GARRETT v. WEINBERG.

1. EVIDENCE—GUARDIAN AD LITEM.—Order appointing guardian *ad litem* properly admitted, though not filed, or recorded, or accompa-nied by a petition, there being some evidence to show petition was lost. Such objection made for first time after several trials comes 'too late.

2. IBID.—WITNESS.—Any person having heard a deceased witness tes-tify at a former trial, may reproduce his testimony; but incompetent evidence given by deceased witness without objection should be ruled out on objection. Following *Brice* v. *Miller*, 35 S. C., 549.

3. IBID.—REAL PROPERTY—WITNESS.—A grantor, after conveying land with full warranty, cannot be heard as a witness to disparage or restrict the title conveyed.

4. DEEDS—DOWER—INHERITANCE.—Release of inheritance and of dower on a deed cannot have the effect of contradicting the plain words of the deed.

5. EVIDENCE—ADVERSE POSSESSION—COMMON REPUTATION.—Can the notoriety of adverse possession be shown by common repute?

6. IBID.—Judgment roll incompetent because *inter alias acta*.

7. NONSUIT.—Refusal of nonsuit proper, because deed introduced by plaintiffs did not show title out of them.

8. CHARGE.—Exceptions to charge as on facts overruled.

9. NEW TRIAL.—There was error in law in refusing motion for new trial, because there was no evidence to show that both parties claimed from common source.

10. JURIES.—A person convicted of larceny in 1871 is disqualified as a juror under Constitution of 1895.

11. EX POST FACTO—JURIES.—A statutory or constitutional provision making a past crime a disqualification for service as a juror is not an *ex post facto* law.

12. JURIES.—Under 14 Stat., 690 (Rev. Stat., 2377 and 2379), a person convicted of larceny was disqualified to act as juror.

13. IBID.—NEW TRIAL.—New trial should be granted when a disqualified juror sat on the case, of which the parties to the suit, or their attorneys, did not know until after verdict. *Rev. Stat., 2406 and 2407, construed.*

14. Petition for rehearing refused.

Before WITHERSPOON, J., Sumter, October term, 1897. Reversed.

Action for partition by the heirs at law of Thomas Garrett *v.* Rosa Weinberg and William Osteen. From judgment on verdict for plaintiff, and reversal of motion for new trial, defendants appeal, on following exceptions:

*First.* Because the presiding Judge erred, it is respectfully submitted, in admitting in evidence the unfiled order of J. D. Graham, clerk of said Court (Exhibit L, at folio 379-382), appointing Jacob Rushing guardian *ad litem* over the objections of the defendants, when it did not appear that any petition had ever been made or filed praying such appointment or that any order had ever been filed or recorded making such appointment.

*Second.* Because the presiding Judge erred, it is respectfully submitted: A. In admitting the testimony of A. B. Stuckey, Esq., (folio 327, et seq.), over objection of defendant, as to what was said by the witnesses, Elizabeth Moore and M. C. Hodge, at a former trial of this case; the stenographer's notes taken at said former trial being the primary evidence of what said witnesses testified at the time. B. In admitting the testimony of Elizabeth Moore, given at a

former trial and now repeated by Mr. Stuckey as follows: Q. Do you remember what she testified to in regard to this land in controversy? A. Yes, sir; I remember what she said. She said that she made a deed to this land to E. W. Moise in the year 1871; she said that it was made over there (pointing over the street), up in a little room; she said that gentleman (pointing to Mr. Lee), was present; she said she married Thomas Garrett; that he was in possession of the land when she married him; that she was left in possession of it at the time of his death, and she turned the possession over to E. W. Moise. She said that she sold E. W. Moise her interest. Q. Did she not testify in any wise of the interest that she had in that land? A. Yes, sir; she said that she found Thomas Garrett in possession; he was in possession when she married him. She said that when he died he left her in possession of it; that she was his widow, and she sold her *interest* to E. W. Moise. She said the way that she *got any* interest in that land was by the marriage of Thomas Garrett and by his death; for the reason that the said testimony was intended and did in effect limit, contract and vary the terms of the deed of John S. and Elizabeth Moore (folio 353) to E. W. Moise, after execution of her deed and parting with the possession. C. In admitting the testimony as set forth in subdivision B of this exception, as the same was irrelevant to the issues involved, and incompetent.

*Third.* Because his Honor erred in permitting the witness, John S. Moore, to give the following testimony over objection of the defendants (folio 371, *et seq.,* to wit) : Q. How did you derive title in this property—by marrying Mrs. Garrett? A. Yes, sir. Q. Did you derive any other interest in any other way than by that marriage? A. No, sir. Q. You did not have any other interest in the land except as the husband of the widow of Thomas Garrett? A. No, sir. Whereas, such testimony should have been excluded on the ground that it was the oral statement of the vendor under a deed with warranty, in derogation of his

9—54

vendee's title made after he had parted with the title and the possession, and, therefore, irrelevant and incompetent.

, *Fourth.* Because his Honor erred in excluding the question asked the witness, John M. Tindal, as follows (folio 231-232) : Q. Did you know him (Thomas Garrett) when he died? A. In 1865— Q. At the time he died, what was the common reputation in that community as to whether or not he had any real or personal property? The said question being competent to show that Garrett was not holding any property openly and adversely to the world.

, *Fifth.* Because the presiding Judge erred in excluding the judgment roll 6712, in the case of John A. Garrett *v.* John C. Rhame (folio 254, *et seq.*), which showed what be- came of the negro Bob (said case reported in 9 Rich., 407), because the transactions surrounding the negro Bob, though not in issue, were so connected with the facts in issue as to form a part of the same transaction, were facts deemed by law to be relevant.

· *Sixth.* Because the presiding Judge erred in excluding the following question, addressed to the witness, L. D. Winkles (folio 295) : Q. What was his (Thomas Gar- rett's) reputation in the community as to whether he owned any property, real or personal? The said question being proper to show that Garrett was not claiming any property openly and notoriously adversely as his own, at the time of his death.

*Seventh.* Because the presiding Judge erred in overruling the defendant's motion for a nonsuit based on the ground that the plaintiffs having introduced the deed of Elizabeth and John S. Moore to E. W. Moise (folio 353, *et seq.*) had thereby proven title out of themselves, as said deed in no way lead up or pointed to a common source of title, but, on the contrary, was in derogation of the alleged common source of title; and there being no admissions on the part of the de- fendants by the pleadings or the evidence that they claimed through a common source with the plaintiffs by reason of said deed or otherwise, the said deed conveyed an estate by

entirety, and totally inconsistent with a claim of common source under Thomas Garrett, and there was no other evidence tending to show a common source.

*Eighth.* Because the presiding Judge erred in charging the jury as follows (folio 541-542) : "They allege that the defendants, Rosa Weinberg and W. L. Osteen, are in possession of the land, and they claim that each of their titles were derived by E. W. Moise from Moore and his wife, Elizabeth Moore, who claimed to be the wife of Thomas Garrett, *they allege, therefore,* that both plaintiffs and these defendants, who claim through E. W. Moise, claim from a common source of title," which said charge was clearly a charge upon the facts, there being no such allegation in the complaint nor admission in the answer.

*Ninth.* Because the presiding Judge erred in charging the jury upon the facts of said case contrary to the provisions of the Constitution of said State, in that he charged the jury : A. "It is conceded according to the pleadings and according to the decision of the Supreme Court, that up to this time the defendants have a one-half interest in the land. There was no question about that; that is the one-third interest of Elizabeth Moore conveyed to E. W. Moise and the interest given them by the Supreme Court, John A. Garrett's interest" (folio 544). Whereby it will be seen that his Honor referred to "the one-third interest of Elizabeth Moore," which was prejudicial to the defendant's case, there being no such concession on their part either by the pleadings or the proof. B. "Mr. Foreman, in this case, it seems to me, so far as the questions of fact are concerned, mainly, you can refer to two issues or two points; the plaintiff has introduced testimony to show that Thomas Garrett was seized or possessed of the land for twenty years or more, adversely, openly and notoriously under a color of title for twenty years or more, and continued in the possession up to his death in 1865." Which is clearly a charge upon the facts at issue in this case (folio 557). C. (Folio 562) : "They have introduced titles to Mrs. Weinberg and Mr. Os-

teen and the titles going back to E. W. Moise, and the plain-
tiffs here have done that, they say, for the purpose of show-
ing common source of title." Which charge was clearly a
charge upon the facts at issue and wholly prejudicial to the
defendants' case. D. (Folio 563-564) : "Why does the
plaintiff seek to connect himself in the title with the defend-
ants? Why does he seek to show that they claim from a
common source? To keep from going back to a grant,"
This being a charge upon the facts, and leading the jury to
believe that the plaintiff did seek to connect with the defend-
ants, and they claimed from a common source. E. (Folio
569-570) : "Now, Mr. Foreman, I have admitted testimony
not for that purpose, I want it distinctly understood, not to
allow either the grantors, Moore or his wife, to impeach that
deed, to vary its then legal effect, but to show the circum-
stances under which the deed was executed, I have permit-
ted that evidence." Which said charge immediately fol-
lowed his charge upon common source of title, and lead the
jury to believe that by reason of the submission of the case
to them, there existed in the opinion of the Judge sufficient
evidence of common source of title; moreover, this was
clearly a charge upon the facts, as the Judge erred in refer-
ring to "the deed" (meaning the deed of the two Moores to
E. W. Moise). F. (Folio 573) : "The plaintiff seeks to
show common source of title. He must show that by the
preponderance of the evidence." "If the plaintiff has failed
to show that they claim through a common source with W.
L. Osteen and Mrs. Rosa Weinberg, then you must not con-
sider the question of common source, then they must go back
and rely on the title at the time of the death of Thomas Gar-
rett" (folio 574). Which was in effect an argument on the
facts of this case.

*Tenth.* Because the presiding Judge erred, as matter of
law, in overruling the defendants' motion for a new trial,
which was based upon the following grounds: 1. That the
testimony of Mr. A. B. Stuckey was improperly admitted as
to the testimony given at a former trial of said case by Mrs.

Elizabeth Moore and Mrs. Hodge, because said testimony of
Mr. Stuckey was secondary, and not the primary evidence of
what said witness had said at the former trial.  2. Because
the testimony of Elizabeth Moore, which was given as
above, was incompetent, in that it tended to limit the grant
and derogate from the legal effect of the deed of John S.
and Elizabeth Moore executed to E. W. Moise, which deed
had been put in evidence by the plaintiffs.  3. Because
James L. Ardis, a member of the jury, was not competent
to serve as such, for the reason that he, prior thereto, had
been convicted of a scandalous crime, to wit: larceny; had
been sentenced to the penitentiary therefor and had served
his sentence; all of which was unknown to the defendants
or either of them, or to their counsel, at the time of said
trial.  4. Because the evidence on behalf of the plaintiffs to-
tally failed to prove that a title to the premises was vested in
Thomas Garrett at the time of his death.  5. Because the
evidence offered by the plaintiffs totally failed to show any
common source of title in the plaintiff and defendants, but,
on the contrary, the evidence so offered indicated that no
common source existed.  6. Because the jury disregarded
the charge of the presiding Judge, that the possession of
Thomas Garrett must have been openly and notoriously ad-
verse to the world for the period of twenty years to vest title
in him.  7. Because the jury were plainly instructed that if
they could not find from the evidence that the title had
vested in Thomas Garrett, that then the plaintiffs could not
recover, unless the jury should find from the evidence that
the plaintiffs and the defendants claimed from a common
source of title, which instruction they disregarded.  In
that: A. His Honor erred in overruling the objections to
the testimony of A. B. Stuckey, and holding it to be primary
evidence of what had been testified to by Elizabeth Moore
and Mrs. Hodge (folio 327, *et seq.*), and in holding that
such testimony did not tend to vary by parol the force and
effect of the deed of John S. and Elizabeth Moore to E. W.
Moise.  B. In holding that the evidence as to a common

source of title was sufficient to support the verdict, the only
evidence tending in that direction being the testimony of
Elizabeth and J. S. Moore, at folios 371, *et seq.,* and 333,
*et seq.,* and their deed to E. W. Moise, folio 353, *et seq.*   C.
In holding (folio 642, *et seq.*), that James L. Ardis was not
disqualified to sit as a juryman in 1897, because at the time
of his conviction of larceny in 1871, he was not disqualified
to act as juryman; and in holding that the verdict was not
invalid, although the board of jury commissioners did not
discharge their duty as required by law—in that they re-
turned as a juror one who had been convicted of a scandal-
ous crime; and because he erred in not holding that J. L. Ar-
dis was disqualified, because he was not a man of good moral
character at the time of the trial; and because he erred in
holding that J. L. Ardis could sit as a juryman in this case,
although he was not at that time a qualified elector.   D. In
refusing a new trial, having held in his order (folio 641, *et
seq.*), that Garrett had not perfected a title by adverse pos-
session at the time of his death, and, therefore, no title could
be transmitted to his heirs.   E. In refusing a new trial,
after holding that Thomas Garrett had no title at the time
of his death (folios 641-2), and consequently none could
descend to his heirs, and, therefore, the defense raised by de-
fendants' answer of the statute of limitations, and the pre-
sumption of a deed by reason of the twenty year connected
possession of the defendants and those through whom they
claimed, should have prevailed.

*Messrs. Lee & Moise,* for appellants, cite: *As to first ex-
ception:* 41 S. C., 1; 50 S. C., 380; Rule LXXIII., Cir. Ct.
*Second exception, sub. "A."* 35 S. C., 543; 1 Bail., 542; 2
McC., 518.   *Sub. "B" and "C."* 43 S. C., 371; 4 Rich., 422;
1 Strob., 48; 54 Am. Dec., 305; 41 Ib., 44.   *Fourth and
sixth exceptions:* 8 Minn., 148; 32 Md., 4; 6 Gill & J., 63;
10 Allen, 493; 33 Vt., 414; 3 Gray, 594; 2 Bland., 509.
*Fifth exception:* 48 S. C., 472; 45 S. C., 318; 2 M. & W.,
326; 7 Bing., 332.   *Seventh exception:* 48 S. C., 28; 36 S.

C., 385; 29 S. C., 274; 24 S. C., 332; 5 Rich., 542; 1 Strob., 1; 1 Hill, 380; 15 S. C., 264; 29 S. C., 50; 38 S. C., 421; 26 Pa. St., 392; 39 S. C., 274; 3 L. Cas. Real. P., 147, 154; 4 Rich. Eq., 80; 38 S. C., 9, 421; 48 S. C., 28; 43 S. C., 371; 9 Rich., 53; 4 Rich. 422; 1 Strob., 48; 22 S. C., 136; 15 S. C., 271; 12 S. C., 97; 28 S. C., 530; 36 S. C., 559; 29 S. C., 49; 23 S. C., 392. *Ninth exception, Sub. "B."* 47 S. C., 523. *Sub. "C."* 47 S. C., 522; 49 S. C., 481, 413. *Sub. "D."* 48 S. C., 148. *Sub. "E."* 48 S. C., 148; 49 S. C., 481; 47 S. C., 522; art. V., sec. 26, Con. 1895. *Sub. "F."* 51 S. C., 453; 49 S. C., 285, 488, 518. *Tenth exception:* 17 Ill., 47; 10 John., 223, 292; 3 Gil., 365; 2 Scam., 528; 15 S. C., 274. *Sub. 3:* 14 Stat., 119, 691; Rev. Stat., 2377; Rev. Stat., 1872, p. 519; Rev. Stat., 2379; art. 8, sec. 8, Con. 1868; art. 5, sec. 22, Con. 1895; art. 2, sec. 6, Con. 1895; 114 U. S., 15; Rev. Stat., 2406; 20 S. C., 431; 6 Mackey, 66; Rev. Stat., 2403; 7 Cranch, 247; 51 S. C., 40; 35 S. C., 350; 2 Ill., 476; 1 Conn., 401; 51 Wis., 324; 10 Ia., 309; 16 Ind., 299; 16 Mich., 351; 27 Kan., 581; 41 Am. R., 424; Kirby R. (Conn.), 13; 3 Harr., 101; 1 Yeatts, 326; Hardin (Ky.), 157; 3 Bibb, 342; 4 Bibb, 191; 2 D. Chip., 45; 4 Vt., 363; 59 Ga., 470; 5 Ga., 140; 1 Foster, 438; 32 Me., 310; 28 Ga., 439; 47 Me., 593; 13 Ind., 90; 60 Ga., 550; 10 Ia., 309; 40 Ill., 352.

*Messrs. A. B. Stuckey* and *Thos. S. Moorman,* contra, cite: *As to first exception* 2 Bail., 463. *Second exception, Sub. "A."* 35 S. C., 543. *Subs. "B"* and *"C,"* and *third exception "A."* 43 S. C., 37; 33 S. C., 169. *Fourth and sixth exceptions:* 50 S. C., 161. *Ninth exception, Sub. "B."* 48 S. C., 145, 253. *Sub. "C."* 47 S. C., 517; 49 S. C., 305, 558. *Sub. "D."* 49 S. C., 448; 50 S. C., 168. *Sub. "E."* 50 S. C., 240. *Tenth exception, Sub. "C."* Rev. Stat., 2407; 2 N. & McC., 264; 2 McC., 14; 11 S. C., 320; 14 S. C., 410; 8 S. C., 327; 26 S. C., 114; 7 Rich., 329; 1 Bail., 330; Rev. Stat., 2377; art. 8, sec. 8, Con. 1868, amended; art. 1, sec. 10, Con. U. S. *Technical error harmless:* 51 S. C., 312.

The opinion was filed October 29, 1898, but remittitur stayed until January 7, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This case having been before this Court on three previous occasions, it is not deemed necessary to make a full statement of the case, as that may be obtained from the former appeals, which will be found reported in 43 S. C., 36, 48 S. C., 28, and 50 S. C., 310. It is only necessary now to state that the plaintiffs, recognizing the title of the defendants to one undivided half of the land in dispute, which is now in the possession of the defendants, claim title to the other undivided half, and seek by this action to establish such title for the purpose of obtaining partition of the land. The plaintiffs base their claim of title upon the allegation that the land in question originally belonged to one Thomas Garrett, who died intestate on the — day of November, 1865, leaving as his heirs at law, his widow, Elizabeth, who subsequently intermarried with one John S. Moore, and his children, named in the complaint, and the plaintiffs are the children who survived at the time of the commencement of this action, together with the descendants of those who had previously died. The plaintiffs did not undertake to trace their title back to a grant from the State, but endeavored to establish their title by offering evidence to show that their ancestor, Thomas Garrett, for more than twenty years prior to his death, had been in notorious, adverse possession of the land, from which they claimed that a grant from the State would be presumed. 2d. By undertaking to show that both plaintiffs and defendants claimed from Thomas Garrett as a common source of title, which superceded the necessity for going back to a grant from the State. This question of title was tried before his Honor, Judge Witherspoon, and a jury, who rendered a verdict in favor of plaintiffs. A motion for new trial was made on the minutes, upon grounds which will be hereinafter stated, which, being refused, judgment was entered upon the verdict. From this judgment, as well as

from the order refusing a new trial, defendants appeal upon
the several grounds set out in the record.   The exceptions
impute error to the Circuit Judge:  1st.  In his rulings as to
the admissibility of testimony.  .2d.  In refusing the motion
for a nonsuit.   3d.  In his charge to the jury.   4th.  In re-
fusing the motion for a new trial.

The first specification of error as to the admissibility of
testimony is  in receiving  in evidence the  order of
Graham, clerk, appointing a guardian *ad litem* for
one of the infant plaintiffs, when it did not appear
that any petition had ever been filed praying for such ap-
pointment or that such order had ever been filed or recorded.
The order in question was shown to have been signed by the
clerk, with the seal of the court attached, and there was tes-
timony tending to show that the petition had been filed,
though after search it could not be found.   This, we think,
was sufficient, in view of the testimony as to the condition
of the office.   Besides, it seems to us that this objection
made for the first time, after several trials of the case, came
too late.   The first exception is overruled.

The next specification of error is in allowing A. B.
Stuckey, Esq., to testify as to what two deceased witnesses
testified at a former trial—the claim being that the stenog-
rapher's notes were the best evidence.   This matter is dis-
posed of by what was said in *Brice* v. *Miler,* 35 S. C., at page
549.   But while we hold that there was no error in allow-
ing Mr. Stuckey, who was  one of  the counsel for
plaintiffs, and, therefore, presumed  to  have  taken
particular  notice of what occurred, to testify as to
what deceased witness had testified to at a former trial, *pro-
vided such testimony is competent,* yet we cannot hold that
incompetent testimony can thus be injected into a case.   If
Mrs. Moore, for example, had been alive at the trial which is
now under review, and had offered to testify as Mr. Stuckey
says she did, and her testimony had been ruled out as incom-
petent, surely there would be error in allowing Mr. Stuckey
to reproduce this incompetent testimony, whether such testi-

mony had been objected to or not; for when a new trial is
ordered in a case, it must be treated as if there had been no
previous trial; so far as this matter is concerned; and hence,
if incompetent testimony is offered upon the new trial, it
must be ruled out, if objected to, even though it had been
received without objection at the previous trial.    But, as a
matter of fact, it seems that Mr. Stuckey admits that this
testimony of Mrs. Moore was objected to at a former trial,
and though let in by the Circuit Court, the question of its
competency was never passed upon by the Supreme Court,
for the obvious reason that the previous judgment was in
favor of defendants, and hence there was no occasion for
them to appeal.    So that the question as to the competency
of the testimony of Mrs. Moore as reproduced by Mr.
Stuckey is, for the first time, presented for the con-
sideration of this Court.    In view of the fact that
plaintiffs introduced a deed from John S. Moore and
Elizabeth Moore to E. W. Moise, Esq., conveying to him
the whole of the land, with full covenant of warranty, with-
out anything whatever on the face of the deed indicating
that anything less than the *entire* interest in the land was in-
tended to be conveyed, and Mr. Moise having gone into pos-
session under that deed, it surely would not be competent for
either John S. Moore or Elizabeth Moore, after they had
thus parted with the title to and the possession of the land,
to give any evidence in disparagement of the title which they
had conveyed to Moise.    The rule is well settled that the
declaration of a grantor, made after he has parted with the
possession of the thing sold in disparagement of his title, are
not competent against his grantee or those claiming under
him—*Kittles* v. *Kittles,* 4 Rich., 422; *Renwick* v. *Renwick,*
9 Rich., 50; *Hobbs* v. *Beard,* 43 S. C., 370.    Upon the same
principle, a grantor, after conveying land with full covenant
of warranty, should not be heard as a witness to impeach,
disparage or restrict the title which he has by his solemn
deed conveyed.    It seems to us, therefore, that there was
error on the part of the Circuit Judge in receiving the testi-

mony of John S. Moore, tending to contradict his deed, by
showing that while he had conveyed the entire interest in the
land to Mr. Moise, he was only entitled to and only had a
right to convey an undivided one-third interest.    For a sim-
ilar reason, the testimony of Mrs. Moore to the same effect
as reproduced by Mr. Stuckey was likewise incompetent.
If it should be said that the certificates indorsed on the deed,
whereby Mrs. Moore purported to release her dower
and her estate of inheritance, were suffivient to show
that she acquired her interest in the land as the
widow and heir at law of Thos. Garrett, the answer will be
found in what was said by Mr. Justice Gary, in determining
the former appeal in this case (48 S. C., at page 42) : "The
certificates aforesaid cannot have the effect of contradicting
the plain and express words of the deed."    The exceptions
complaining of error in admitting the testimony of John S.
Moore, and that of Mrs. Moore as reproduced by Mr.
Stuckey, above referred to, must be sustained.

The next specification of error in the rulings of the Cir-
cuit Judge, as to the admissibility of evidence, is in refusing
to allow the witnesses, Tindall and Winkles, to testify as to
the common reputation of the neighborhood, as to
whether Thomas Garrett was holding any property
as his own at the time of his death.    Inasmuch as
the plaintiffs attempted to establish title in Thomas Garrett
by adverse possession, which to be effective must be open
and *notorious,* it would seem that the testimony objected to
was relevant as to the point of *notoriety;* but as the Circuit
Judge says, in his order refusing the motion for a new trial:
"I do not think that the verdict of the jury can be sustained
upon the ground of such adverse possession by Thomas Gar-
rett, from which a grant of the land would be presumed."
This error, if error it be, would seem to be harmless, for the
inference is that, if the plaintiffs' case rested only on such
adverse possession, he would have granted a new trial.

The only other stipulation as to this point is that men-
tioned in the fifth exception.    The record excluded was

manifestly *res inter alias acta,* and was, therefore, incompetent. We are unable to perceive such a connection with the matters here in issue as would bring it within the exception to the general rule. This exception must, therefore, be overruled.

The next inquiry is whether there was error in refusing the motion for a nonsuit, which was based solely upon the ground that the plaintiffs, by introducing the deed from John S. Moore and Elizabeth Moore to E. W. Moise, had thereby proved title out of themselves. We are not prepared to accept that view. The plaintiffs claimed title as heirs of Thomas Garrett, and made no claim of title through or under that deed, or through the grantors named therein. It did not appear from the face of that deed, or from any other competent evidence, how or when John S. Moore and Elizabeth Moore acquired the title to the land which they undertook to convey to Moise, under whom the defendants claimed; and hence, while it did not serve the purpose for which it was introduced—to show that both parties claimed from a common source—it likewise did not show that the title of John S. and Elizabeth Moore was superior to that of Thomas Garrett, under whom the plaintiffs claimed as heirs at law. Consequently, if the plaintiffs offered any evidence tending to show that the title was in Thomas Garrett, either by adverse possession or otherwise, in the absence of any evidence that the title had ever passed out of him, they would be entitled to go to the jury on such evidence. The plaintiffs certainly did offer some evidence of title by adverse possession in Thomas Garrett, which though conflicting, it was for the jury to pass upon. There was no error in refusing the motion for nonsuit.

Our next inquiry is whether the several exceptions imputing error to the Circuit Judge in charging on the facts, are well founded. We have carefully considered these exceptions in connection with the charge of the Judge, and deem it sufficient to say that we do not think that any

of them can be sustained, and we do not see that it would serve any useful purpose to consider them in detail.

It only remains to consider the exceptions to the order refusing a new trial. Some of the points raised by these exceptions have already been disposed of, and will not again be considered. Indeed, the exceptions raise but two points which seem to require further consideration. 1st. As to whether there was any competent evidence that the parties claimed from a common source of title. 2d. Whether there was error in ruling as to the disqualification of the juror, J. L. Ardis. The Circuit Judge, in his order refusing the motion for a new trial, used this language: "I do not think that the verdict of the jury can be sustained upon the ground of such adverse possession by Thomas Garrett, from which a grant to the land would be presumed, but I conclude that the evidence as to a common source of title was sufficient to support the verdict, and I cannot grant a new trial on the ground last above mentioned." From this, it is apparent that the Circuit Judge based his refusal of the motion for a new trial solely upon the ground that the evidence was sufficient to show that both parties claimed from a common source of title; and if, as we have seen, the evidence upon which he relied to support his conclusion was incompetent, then there was error of law in refusing the motion for a new trial. The deed from John S. Moore and Elizabeth Moore to E. W. Moise, introduced by plaintiffs for the avowed purpose of showing a common source of title, certainly did not show, or even tend to show, that the defendants claimed under Thomas Garrett. On the contrary, it only showed that the defendants claimed under John S. Moore and Elizabeth Moore, and certainly the plaintiffs did not claim under those persons, for they claimed under Thomas Garrett, whose name is not mentioned, or in any way alluded to, in that deed. So that the only evidence to support the conclusion of the Circuit Judge must be found in the testimony of John S. Moore and Elizabeth Moore, which, as we have seen, was incompetent. Upon this

ground, therefore, there was error of law in refusing the motion for a new trial.

It only remains to consider whether there was error in refusing the motion for a new trial upon the ground of the disqualification of the juror, James L. Ardis, who sat on the trial of this case. The undisputed fact is that Ardis was convicted of larceny, in May, 1871, and sentenced to confinement in the penitentiary for the term of ten months, and there was no pretense that he had ever been pardoned. The Circuit Judge finds as a fact, "that none of the parties to this action, or their respective counsel, had knowledge of the conviction of Ardis during the trial of the case." These facts must be accepted as true, for the former is not only fully established by the record of the conviction of Ardis; but was also undisputed, while the latter was not only found by the Circuit Judge, but his finding is fully sustained by the evidence adduced. Upon these facts two questions of law arise: 1st. Whether J. L. Ardis was disqualified to sit as a juror. 2d. If so, does the fact that he was one of the jurors who rendered the verdict in this case entitle the defendants to a new trial? As to the first question, there can be no doubt that Ardis was disqualified under the express provisions of the present Constitution, which had gone into effect before the trial, which took place in October, 1897. In sec. 22 of art. V. of the present Constitution, we find the following provision: "The petit jury of the Circuit Courts shall consist of twelve men, all of whom must agree to a verdict in order to render the same. Each juror must be a qualified elector under the provisions of this Constitution, between the ages of twenty-one and sixty-five years, and of good moral character." And in sec. 6 of art. II. it is declared that: "The following persons are disqualified from being registered or voting: *First.* Persons convicted of * * * larceny, * * *" It is clear, therefore, that the juror in question, not being a qualified elector, was disqualified to sit as a juror. It is contended, however, that inasmuch as the juror was convicted of larceny in 1871;

long prior to the adoption of the present Constitution, at a time when, it is claimed, such conviction did not disqualify him from serving as a juror, he could not be disqualified by any subsequent legislation, either constitutional or statutory, as such legislation would be *ex post facto,* and, therefore, void under the provisions of the Constitution of the United States. In the first place, we are not prepared to admit that Ardis was qualified to sit as a juror, even under the law as it stood at the time of his conviction, for the reasons that will be presently stated; and, in the second place, we are of opinion that the qualifications of an elector and, as a consequence, the qualifications of a juror. may at any time be changed by the sovereign power of the State—the people—speaking through their regularly ordained Constituion, whenever it is deemed necessary or expedient for the public welfare that such change should be made, without any violation of the *ex post facto* provision of the Constitution of the United States, and without divesting any vested rights of the citizen. As is said in Cooley on Const. Lim. (2d edit.), at page 598, in speaking of the so-called right to participate in elections: "Each State establishes its own regulations on this subject—subject only to the fifteenth amendment to the National Constitution, which forbids that the right of citizens to vote shall be denied or abridged on account of race, color or previous condition of servitude. *Participation in the elective franchise is a privilege rather than a right* (italics ours), and it is granted or denied on grounds of general policy." Hence a State may make any change in the law prescribing the qualifications of electors deemed necessary to effectuate its views of public policy, subject only to the provisions of the fifteenth amendment above referred to, and any legislation to that end possesses none of the features of an *ex post facto* law (see comments of Judge Cooley upon this subject in his work on Const. Lim., at p. 263, *et seq.*), and cannot be regarded as divesting any *vested right* of the citizen. If this be so as to the important matter of the qualifications of an elector, how

much more is it true as to the qualifications of a juror.   Indeed, service on a jury is not a matter of *right,* but a matter of public *duty,* the performance of' which is enforceable by proper penalties.   It cannot be regarded as a privilege, but on the contrary is usually regarded as a burden.   Hence we see no reason why the State may not, from time to time, make such alterations in the law prescribing the qualifications of a juror by legislation, either constitutional or statutory, as the case   may require, as may be regarded most conducive to the public welfare.   A citizen cannot claim any vested right in any statutory privilege or exemption, unless it rests upon some consideration importing into it an element of contract.   As is said in Cooley on Const. Lim., 383, "The citizen has no vested right in statutory privileges or exemptions.   Among these may be mentioned exemptions from the performance of public duty upon juries, or in the militia and the like. * * * All these rest upon reasons of public policy, and the laws are changed as the varying circumstances seem to require."   From these views it necessarily follows that when the question arises as to the qualifications of a given person to sit as a juror, such question must be determined by the law as it stands when such person is presented as a juror.   This view is sustained by the case of the *State* v. *Williams,* 2 Hill, 381, where it was held that the qualification of a juror relates to the time when he is called to serve, and a want of qualification is cause of challenge.   In delivering the opinion of the Court, his Honor, Judge O'Neall, uses this language : "If he had the qualification at that time, and afterwards ceased to be qualified, he could not (if objected to) be sworn on the  jury.   This shows that the objection is personal to the juror, and must be determined by his qualification at the time when the challenge is made."   It is also supported, by analogy, by the cases of *Murphy* v. *Ramsey,* 114 U. S., 15, where the question was as to the right to vote.   In delivering the opinion of the Court, Mr. Justice Matthews uses this language : "The disfranchisement operates upon *the existing state* and

condition of the person, and not upon a past offense" (italics ours.)    It may be noted here that this case also supports our view as to the question of *ex post facto,* above presented. It is clear, therefore, that James L. Ardis was disqualified to serve as a juror upon the trial of this case.

Want of time and space forbids any extended consideration of the question hereinbefore suggested, as to whether the juror was disqualified under the law as it stood at the time he was convicted of larceny.    That law may be found in the act of 1871, 14 Stat., 690, as there was then no constitutional provision upon the subject.    The provisions of that act applicable to this question have been carried forward into the Rev. Stat. of 1893, as sections 2377 and 2379.    The former section provides that all persons who are entitled to vote, "shall be liable to be drawn and serve as jurors, except as herein provided;" and the latter section reads as follows : "If any person whose name is placed in the jury box is convicted of any scandalous crime, or is guilty of any gross immorality, his name shall be withdrawn therefrom by the board of jury commissioners, and he shall not be returned as a juror."    Reading these two sections together, it seems plain that a person, though entitled to vote, if convicted of a scandalous crime—larceny, for example—is not liable to be drawn or serve as a juror, but is expressly forbidden to be returned as a juror; and is, therefore, not qualified to serve as a juror.

The only remaining inquiry is whether the disqualification of Ardis to serve as a juror entitled the defendants to have their motion for a new trial granted.    In view of the express provisions of the Constitution above quoted, which are declared mandatory, it is difficult to see how this question can be answered otherwise than in the affirmative.    This being a question of title to real estate, it is not necessary to cite authority to show that the parties were entitled to a trial by jury.    What that jury should consist of is expresly declared, in mandatory terms, by the Constiution.    It must be a body of twelve men, each of

whom must be a qualified elector, and "all of them must agree to a verdict in order to render the same." These are the express mandates of the Constitution, and it must be obeyed. But here we have a body of twelve men, one of whom is *not* a qualified elector, who has undertaken to render a verdict, which, under the terms of the Constitution, they have no power to do, and hence the same should be disregarded and set aside, and a new trial ordered. It is contended, however, that this objection comes too late, and cannot now be considered. A number of cases have been cited to sustain the position that objection to a juror comes too late after verdict, as that which is a cause of challenge to a juror canot be urged as a ground for a new trial; though there is one case, which has not been cited, *Kennedy* v. *Williams, 2* N. & McC., *79,* in which it was held that, where the objection was not known to the parties until after the jury had brought in their verdict, it was a good ground for a new trial. In addition to this, it will be remembered that when those cases were decided, that we had no such constitutional provision as we now have in regard to juries. Besides, the jury law of 1871, above referred to, contained a section which has been incorporated in the Rev. Stat. of 1893, as sec. 2406, which reads as follows : "If a party knows of any objection to a juror in season to propose it before the trial, and omits to do so, he shall not afterwards be allowed to make the same objection, unless by leave of the Court." This provision would seem to imply that if a party did not know of the objection in season to make it before the trial, he would not be precluded from making such objection afterwards. We are not aware of any case which has been decided since the enactment of this statute, which holds that a party would be precluded from making an objection to a juror after the trial, when such objection did not come to his knowledge in time to make it before or during the trial. Respondents also rely on sec. 2407 of the Rev. Stat. of 1893, which provides as follows : "No irregularity in any writ of *venire facias,* or in the drawing, summoning, returning or

empanelling of juries shall be sufficient to set aside the verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the returning of the verdict." A sufficient answer to this position is that the objection here relied upon is to the disqualification of one of the persons who undertook to serve as a juror, and is not based upon any irregularity in the writ of *venire facias,* or in the drawing, summoning, returning or empanelling of the jurors, and hence the section does not apply. It seems to us, therefore, that the Circuit Judge erred in not granting a new trial upon the ground of the disqualification of James L. Ardis to serve as a juror, the knowledge of which did not come to the parties in season to make the objection before or at the trial; and that the verdict should have been set aside upon the ground that it was not the verdict of a constitutional jury.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Petition for rehearing filed November 9, 1898, and remittitur stayed.

January 7, 1899, PER CURIAM. Upon a careful consideration of this petition the Court is unable to discover that any material fact, or principle of law, has either been overlooked or disregarded, and hence there is no ground for a rehearing. It is, therefore, ordered, that the petition be dismissed, and that the stay of the remittitur heretofore granted be revoked.