STATE v. BERKELEY.

1. JURORS—CONSTITUTION.—THE ACT, 23 STAT., 320, providing for
   drawing jurors in counties containing 40,000 inhabitants or more,
   is an independent act and not in contravention of art. III., sec. 34,
   Con. 1895.
2. IBID.—GRAND JURY—INDICTMENTS—ALIEN.—A true bill found by a
   grand jury on which there was an alien, no objection being made
   before pleading to indictment, and fact not being then known to
   prisoner, is a good indictment, especially when appellant does not
   show that there were on the panel only twelve jurors.

Before KLUGH, J., Charleston, November, 1901.   Affirmed.

Indictment against Edward Berkeley for murder.   From
sentence on verdict of guilty of manslaughter, defendant appeals.

*Messrs. W. St. Julien Jervey* and *T. Moultrie Mordecai,*
for appellant.

*Solicitor T. T. Hildebrand* and *Messrs. Mitchell &
Smith,* contra.

May 26, 1902.   The opinion of the Court was delivered
by

MR. JUSTICE POPE.   The defendant was tried for murder, but by the verdict of the jury was found guilty of manslaughter.   After conviction, the Circuit Judge passed sentence upon the prisoner.   From this judgment the defendant
has appealed to this Court.   This appeal is intended to raise
three questions:

*First.* The constitutionality of the jury law enacted in the
year 1900 by the General Assembly of this State.   *Second.*
The validity of the indictment as found by the grand jury,
which had upon its panel a member thereof who was an alien.
*Third.* That the petit jury was drawn in accordance with
the provisions of the said jury law enacted in the year 1900,
and was, therefore, invalid.

The first and third grounds of appeal will be considered together, being based upon the alleged invalid jury law adopted in the year 1900. It may be remarked that the jury laws existing in this State (except that just referred to) have already been declared by this Court as unconstitutional, and, therefore, null and void. *State* v. *Queen,* 62 S. C., 247. It may be, however, that notwithstanding the act of 1900, providing a new system of jury commissioners in this State, so far as counties containing a city or cities with 40,000 inhabitants or over may be concerned—23 Stat. at Large, pp. 320, 321 and 322—purports both by its title and its body to amend previous statutory regulations on the subject of jury commissioners, yet the body of the act as set out in sec. 2931 of the work of code commissioner for this State, as sanctioned by the act of the General Assembly of this State at its regular session in the year 1902, may well stand as an act or system. So, for the purposes of this consideration, I prefer to regard this as an independent act.

Now as to the question, is it constitutional? By its terms it is a general act. Its application is to all counties in this State which are blessed with a city or cities of 40,000 inhabitants. Laws are not enacted alone for the immediate circumstances of a State. It is the part of wisdom to look ahead. To lay foundations upon which its people may expect in the future to build. No doubt the capital of the State—our beautiful and progressive Columbia—may soon fill the requirements as to population. So, too, of the cities of the Piedmont—Greenville and Spartanburg—they may soon find themselves with the requisite population required by this act to be admitted to its privileges. While it is true that the county of Charleston, alone of our counties, has a city of 40,000 inhabitants, yet it is not named in the act; it should be allowed to enjoy its advantages of superior numbers in population. I do not see that this act of 1900 contravenes the provisions of art. III., sec. 34, of our Constitution, which forbids the General Assembly "to enact local or

special laws concerning any of the following subjects or for
any of the following purposes, to wit: I. To change the
names of persons or places * * * VIII. To summon and
empanel grand or petit jurors * * * XI. In all other cases
where a general law can be made applicable, no special law
shall be enacted. XII. The General Assembly shall forth-
with enact general laws concerning said subjects for said
purposes which shall be uniform in their operations: *Pro-
vided,* That nothing contained in this section shall prohibit
the General Assembly from enacting special provisions in
general laws." The mistake, as I take it, made by the ap-
pellant, is in assuming that because the county of Charles-
ton happens to fill the requirements while just now no other
county in the State does so, that no other counties in the
future will do so. If it was an impossibility or an improba-
bility that other counties would do so, there then might be
some good ground for calling this a local law. The truth is,
that if the cities of Columbia or Greenville or Spartanburg,
the first named especially, could draw into their population
the population lying around them and almost ready to be
incorporated in their city limits, we would see at least four
counties in this State with a city of 40,000 inhabitants. A
Constitution is obliged to provide for the future. There can
be no procrustean rule in a Constitution. It must provide
for an expansion far beyond the present environments. A
study of the development in the territory and population of
cities of this great union of States in the last forty years is
obliged to bring home to us this truth. The act is general
in its terms. So I hold the act in question constitutional,
and these grounds of appeal are overruled.

We will now consider the second question: was the pres-
ence of an alien on the grand jury which returned a true bill
on the indictment against the prisoner, appellant, although
this fact was unknown to the prisoner at the time he was ar-
raigned for trial, fatal to such indictment? This
question is settled against the appellant by the case of
the *State* v. *Rafe,* 56 S. C., 370. In the case just

cited, it was held that not only was it the duty of the prisoner to make use of all the means within his reach in order to ascertain the disqualification of the grand juror, before he entered his plea to the indictment, but also in the event he could not have ascertained such disqualification of the grand jurors, it was his duty to show to the Court as a substantive fact that he was prejudiced by the grand juror's presence. It is well known that grand juries in the State are composed of not more than eighteen nor less than twelve grand jurors. While in the present appeal it appears that one Santos Sotillo was an alien, yet the appellant fails to show that there were only twelve grand jurors—here it does not appear that the acquiescence or assistance of Santos Sotillo was necessary to finding a true bill.   The case of *The State* v. *Rafe, supra,* is so recent, it is not necessary to repeat the arguments then made or the authorities then cited.

It is the judgment of this Court, that the appeal be dismissed, and that the prosecution be remitted to the court of general sessions for Charleston County to enforce the sentence already passed herein.