### BISHOP v. NICHOLSON

#### (143 S. E., 802)

NEW TRIAL—ORDER GRANTING NEW TRIAL BECAUSE EMPLOYEE OF MILL, OF WHICH DEFENDANT WAS PRESIDENT, SERVED ON JURY, HELD NOT ERROR; "THE LAW OF THE CASE."—Order granting new trial because employee of cotton mill, of which defendant was president or general manager, served on jury, though he stood up when Court announced that all jurors employed by defendant's various manufacturing establishments should stand up and be excused, *held* not error, though he was not disqualified to serve; such ruling being "the law of the case."

Before SEASE, J., Union, May, 1927.   Affirmed.

Action by L. C. Bishop against Emslie Nicholson.   Verdict for defendant, and from an order granting a new trial, he appeals.

*Messrs. Sawyer & Kennedy,* and *Elliott & McLain,* for appellant, cite: *As to disqualification of juror:* Sec. 577, Code Proc; 31 S. C., 328; 54 S. C., 127; 76 S. C., 539; 100 S. C., 33; 11 S. C. L., 417; 61 S. C., 141; 72 S. C., 104. *Fact of employment is not alone ground for*

*legal disqualification:* 76 S. C., 539; 100 S. C., 33; 126 S. C., 447. *Distinction between jurors who are legally disqualified and those who may be sensible of any bias or prejudice for other causes:* 54 S. C., 147. *As to propriety of new trial where disqualified juror sat on case:* 55 S. C., 90; 74 S. C., 460; 80 S. C., 38. *Jury:* Secs. 550-551, Code Proc. *Burden of showing due diligence is on the objecting party:* 71 S. C., 259; 80 S. C., 38. *New trial improper where no prejudice has resulted to the parties and substantial justice has been done:* 110 S. C., 343. *Presumption is that juror does his duty:* 48 S. C., 8.

*Mr. John K. Hamblin,* and *Mendel L. Smith,* for respondent, cite: *Circuit Judge has large discretionary powers as to the conduct of jury trials:* 76 S. C., 539; 100 S. C., 33; 90 S. C., 425; 5 S. C., 429. *Presiding Judge not required to examine a juror on his voir dire unless a request for such examination has been made:* 76 S. C., 542; 100 S. C., 37.

June 13, 1928.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This is an appeal from an order of his Honor Judge Sease granting a new trial. Judge Sease's order is:

"The above-entitled case came on to be heard at the May term of Court, 1927. At the call of the above-entitled case for trial, plaintiff's counsel requested the presiding Judge to sound the jury as to relationship and interest. It was brought to the attention of the Court that the defendant, Emslie Nicholson, was president or general manager of manufacturing establishments in Union County, and the Court held that any man that is employed in said manufacturing establishments over which the defendant, Emslie Nicholson, was in charge, that the said juror should be excused, and it was announced by the Court that all such jurors employed by the various manufacturing establishments over which the defendant, Emslie Nicholson, was manager or president,

should stand up and be excused from serving upon the above-entitled case, whereupon several jurors stood up, and Mr. H. L. Reeves in his affidavit says that he stood in the Courtroom, but through error his name was placed on the jury list to strike.

"Notwithstanding this fact, H. L. Reeves was selected on the jury, served throughout the trial, and rendered a verdict in favor of the defendant, Emslie Nicholson. Thereafter a motion was made upon three grounds. Among them was the ground that the plaintiff's counsel and plaintiff did not know that H. L. Reeves worked at Ottaray Mill, which is one of the chain of manufacturing establishments over which the defendant, Emslie Nicholson, is manager or president, and did not know this fact until after the verdict was rendered. Affidavits were submitted in the matter. I am of the opinion that there should be a new trial in the above-entitled case on the ground that H. L. Reeves should not have been a member of the jury. I hold that he should have been excused, and I am satisfied that plaintiff and his counsel used due diligence in trying to ascertain if H. L. Reeves did work at Ottaray Mill, one of the chain of the manufacturing establishments over which the defendant, Emslie Nicholson, was manager or president.

"It is therefore ordered, adjudged, and decreed that a new trial be and the same is hereby granted to the plaintiff against the defendant in the above-entitled case. As to the other grounds, they are overruled."

The exceptions are overruled. Judge Sease tried the case and knew all about it, and he granted a new trial, and I do not wish to substitute my opinion for his. He committed no error.

The judgment is affirmed.

MR. JUSTICE BLEASE (concurring) : I am of the opinion that Mr. Reeves was not disqualified under the law to serve as a juror in this case because he was an employee of a cotton mill of which the defendant was president. When the pre-

siding Judge publicly announced, however, that any employee
of any mill of which the defendant was president would not
be allowed to serve on the jury, and no objection was made
by the defendant to that ruling of the Court, such ruling
became "the law of the case." It was the duty, then, of all
the parties to see that the jurors who were impaneled were
not disqualified to sit. It was the duty of the juror himself,
before he was sworn to try the cause, to call the attention
of the Court to the fact of his employment, which the trial
Judge had held to be a disqualification. As a firm believer
in trial by jury, I know if this great right of the people is
to be preserved, the jury box must not only be kept pure,
but that each individual juror ought to be above the least
suspicion. The matter of granting new trials because of
circumstances surrounding the jury under our law is left,
where it rightly belongs, very much to the discretion of the
trial Judge. I cannot find that the Judge in this case abused
that discretion, and I therefore favor the affirmance of the
order of the lower Court.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES
STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : This is an appeal
from an order of his Honor Judge Sease granting a new
trial in an action of libel tried before him, in which the de-
fendant had a verdict. In the plaintiff's motion for a new
trial, there was absolutely no complaint as to the admission
of evidence, or to the conduct of the Judge in any stage of
the proceeding. The trial appears for this reason to have
been perfectly fair with the exception of the matter com-
plained of, which may be thus explained:

The action was against the defendant in his individual
capacity. Upon the call of the case for trial the attorneys for
the plaintiff requested the Court to inquire whether any
of the panel of jurors were employed by any of the mills
of which the defendant was the executive head. Counsel

for the defendant made no objection, and it appears from the order of the Judge granting a new trial, though not in the statement contained in the transcript, that his Honor the Circuit Judge ruled that all such jurors would be excused from serving upon the case. The clerk of Court then directed all such jurors to stand "until their names could be taken." To this direction some six or eight jurors, including one Reeves, stood up; the clerk took down the names of all he saw standing, and their names were omitted from the list prepared and presented to the attorneys. By some oversight the name of Reeves appeared on the. list, was not stricken by either side; he was sworn as a juror, and served during the trial. After the verdict had been rendered, counsel for the plaintiff for the first time discovered that Reeves was an employee of one of the mills managed by the defendant, and moved for a new trial upon the ground of the error in not omitting his name from the list. The motion was granted upon the grounds:

"That H. L. Reeves should not have been a member of the jury. I hold that he should have been excused, and I am satisfied that plaintiff and his counsel used due diligence in trying to ascertain if H. L. Reeves did work at Ottaray Mills."

From this order the defendant has appealed.

In view of the fact that the trial was had without a single objection, absolutely fairly, the Court in my opinion should not disregard the event, except upon the plainest evidence that by an irregularity the ends of justice have not been met, and that the plaintiff and his counsel have not in any way contributed to the complication.

It has been repeatedly held by this Court that the fact that a juror on the panel is an employee of a corporation, party to the action about to be tried, is not a legal disqualification to his serving as a juror upon the case. The rule is clearly laid down in *Tucker v. Cotton Mills,* 76 S. C., 539. Certain jurors were employees of the defendant corporation;

they were excused. from service upon this ground. Upon appeal by defendant the Court said:

"\* \* \* We do not regard this fact as a ground for legal disqualification of a juror."

The same ruling, in effect, appears in *Gunter v. Mfg. Co.,* 18 S. C., 462, and in *Yarborough v. Electric Co.,* 100 S. C., 33; 84 S. E., 308, where the above quotation from the *Tucker case* is reproduced with approval. The Court in the *Tucker case,* however, adds this:

"\* \* \* Still the Circuit Court has very large powers as to the conduct of jury trials, including a discretion to excuse a juror for this cause, if the circumstances are such as, in the judgment of the Court, would afford any reasonable ground for apprehension of unfairness, and his ruling will not be reversed except for abuse of discretion, which does not appear in this case."

See, also, *Crawford v. Traction Co.,* 126 S. C., 447; 120 S. E., 381, where it is said:

"\* \* \* The matter for decision was wholly within the discretionary power of the Circuit Judge, if there were any circumstances which, in his judgment, would afford reasonable ground for apprehension of unfairness or bias."

It would seem from this that something more than the simple fact of employment should appear before this fact should be held to be a ground for excusing the juror even, much less for holding the fact a legal disqualification.

His Honor, as appears from his order, acted solely upon the fact of employment, without inquiry as to the circumstances called for in the preceding cases cited. No objection, however, was interposed by counsel for the defendant, who appear to have conceded the evident contention of counsel for the plaintiff that the fact of employment alone was a ground for excusing the jurors so employed. Nor was any question raised whether the same rule of discretionary excuse, applicable to cases in which the corporation was a party, could be invoked where the managing head of

the corporation, and not the corporation, was a party in his individual capacity. I think, therefore, under the circumstances, the situation is the same as if the jurors had been put upon their *voir dire,* and that upon their examination as to this ground, and any others, the Judge had concluded, in his discretion, that they were not indifferent, and had excused them *separatim.*

The question which has given me pause is whether the counsel for the plaintiff, in the exercise of ordinary care, could and should have prevented the complication which has arisen, which threatens to upset a victory for the defendant fairly won in a contest otherwise fairly fought, and subject him to the expense of this and another trial with its incidental and inevitable embarrassment and risk. Several decisions of this Court are to the effect that a new trial should be granted where it appears that a juror legally disqualified was permitted to serve. *Garrett v. Weinberg,* 54 S. C., 127; 31 S. E., 341; 34 S. E., 70. *Kennedy v. Williams,* 2 Nott & McC., 79. *Robertson v. Tel. Co.,* 90 S. C., 425; 73 S. E., 786. In *State v. Robertson,* 54 S. C., 147; 31 S. E., 868, the distinction is clearly defined between jurors legally disqualified, and those who, for a reason not affecting their qualification to serve, are held by the presiding Judge in the exercise of his discretion to be not indifferent. Even in the more serious case of the legal disqualification of a juror, the Court in *State v. Robertson,* 54 S. C., 147; 31 S. E., 868, declared:

"For while it is true that, in the cases of *Kennedy v. Williams,* 2 Nott & McC., 79, and *Garrett v. Weinberg, supra* [54 S. C., 127; 31 S. E., 341; 34 S. E., 70] some stress is laid, and, in a proper case, properly laid, on the fact that the disqualification of the juror was not known to the party or his counsel until after the trial, yet we think [that] this should be qualified by the proviso that such ignorance is not due to the want of diligence; for where the disqualification relied on might have been discovered by the exercise

of ordinary diligence, it affords no excuse for failing to make the objection in due season; for, as was stated in *State v. Fisher, supra* [2 Nott & McC., 261], a party 'should not be permitted to take advantage of his own negligence.' "

In that case (Robertson) the Court said:

"In this case, as we have seen, the appellant failed to make use of the means afforded by the law to enable him to ascertain the qualifications of each juror presented, and he must take the consequences of his own default."

In *Mew v. Charleston & S. R. Co.,* 55 S. C., 90; 32 S. E., 828, a motion for a new trial was made upon the ground that a juror who sat in the case was not a registered elector, an objection going to the vitals of his qualification as a legal juror. There the Court said:

"In this case, as we have seen, the appellant failed to make ues of the means afforded by 'the law to enable him to ascertain the qualifications of each juror presented, and he must take the consequences of his own default.' In this case the books of registration, which are public records in Charleston County, would have disclosed the juror's disqualification, and defendant's negligence in not consulting the same should prevent us from suspending this appeal now for the purpose named."

In *State v. Rafe,* 56 S. C., 379; 34 S. E., 660, a similar motion was made upon the same ground as to a grand juror, also a question of legal disqualification. There the Court said:

"It was necessary for the appellant to show not only that he did not know of the juror's disqualification until after the trial, but that by the use of due diligence he could not have discovered the same. This he has failed to do."

In *State v. Langford,* 74 S. C., 460; 55 S. E., 120, it was held that—

"Where the disqualification relied on might have been discovered by the exercise of ordinary care, it affords no excuse for failing to make the objection in due season, since

a party should not be permitted to take advantage of his own negligence."

In *Jeffers v. Jeffers,* 89 S. C., 244; 71 S. E., 810, the Court quotes from 24 Enc. L. (1st Ed.), as follows:

"After a trial has been commenced, no attempt to recuse a Judge will be listened to, unless it be shown, affirmatively, that the party was not aware of the objection, *and was in no fault, for not knowing it."* (Italics by the Court). Citing *State v. Roberts* and *State v. Rafe.*

In *State v. Johnson,* 123 S. C., 50; 115 S. E., 748, the Court said:

"It is no valid ground for setting aside the verdict of a jury that the moving party was ignorant of the disqualification of a juror, and so failed to challenge him, if the disqualification relied on might have been discovered by the exercise of ordinary care." Citing S. C., cases hereinbefore referred to.

In *State v. Berkeley,* 64 S. C., 194; 41 S. E., 961, the Court, citing the *Rafe case,* held that—

It was "the duty of the prisoner to make use of all the means within his reach in order to ascertain the disqualification of the grand juror."

To the same effect is *Blassingame v. Laurens,* 80 S. C., 38; 61 S. E., 96.

Section 579 of Code Civ. Proc. provides:

"All objections to jurors called to try * * * actions * * * if not made before the juror is empaneled for or charged with the trial of such * * * action * * * shall be deemed waived; and if made thereafter shall be of none effect." Commented upon in the *Johnson case,* 123 S. C., 50; 115 S. E., 748.

The rule above referred to, that the movant must affirmatively show that he had exhausted the means within his power to ascertain the disqualification of the juror, has been applied to cases involving human life and liberty and where the objection involved the serious question of the legal qual-

ification of a juror. *A fortiori,* it appears to me that it should be applied to cases involving property rights and the less pungent objection that the juror was not indifferent.

Has, then, the plaintiff carried the burden of showing ordinary care under the circumstances in ascertaining the fact upon which he relies that the juror was not indifferent?

It will be observed that the learned Circuit Judge was quite guarded in his expression as to the efforts of the plaintiff and his counsel:

"I am satisfied that plaintiff and his counsel used due diligence in trying to ascertain if H. L. Reeves did work at the Ottaray Mill."

Nothing is said as to their diligence in connection with the events that occurred in the courtroom.

The affidavits submitted by the plaintiff are entirely of a negative character; that he and his counsel did not know Reeves or that he was working at the mill. There is not a single fact stated of any effort made to find out who Reeves was, or where he was working; nothing of affirmative action. The statute regulated the time for drawing the panel of jurymen, of advertising and posting their names—ample time for investigation of every man drawn. The affidavits do not show that either the plaintiff or his counsel ever saw the names of the jurors or made the slightest investigation which would have disclosed the ground for excusing any of them.

Now coming to the events of the Court trial:

It was counsel for the plaintiff who instituted the ceremony of interrogating the jurymen in reference to their employment, a "short form," a substitute, by apparent agreement, for swearing them upon their *voir dire.* Having instituted it, it was but natural that they should attend to the result of the clerk's direction that they stand. Reeves was among those who stood. It is incredible that he was not seen by all. Without apparently paying the slightest attention to further proceedings, but, as counsel, states

"relying upon the inquiry made by his Honor," the preparation of the list proceeded with the name of Reeves upon it. It was handed to counsel, who it is assumed struck four names more objectionable than the unknown Reeves. He was sworn in and continued for the length of the trial to sit facing counsel. It is apparent that he was not recognized by them as one of the jurors who stood up affirming the fact of his employment. Does that carry the burden of affirmatively showing that the plaintiff and his counsel "made use of all the means within his (their) reach to ascertain the disqualification" or ground of excuse? I do not think so. I do not attach any blame to counsel, for it was an ōmission that might have occurred to any lawyer, trusting to the accuracy and efficiency of the clerk; but if it was an omission, which I think is clear, that necessarily negatives the conclusion of affirmative action of diligence, necessary to be shown.

I think, therefore, that the order should be reversed.